SCHWEMER, Trustee, Respondent, vs. MILWAUKEE COM-
MERCIAL BANK, Appellant.

*November 13—December 9, 1924.*

*Bankruptcy: Preferential payments: Insolvency: Knowledge of
creditor: Payments in ordinary course: Evidence: Relevancy:
Sufficiency.*

1. In an action by a trustee to recover money and the value of
   property delivered by a bankrupt to defendant, on the ground
   that it constituted a preference, a statement of the assets and
   liabilities of the bankrupt furnished to the defendant in an
   entirely different transaction, though not verified as to its
   correctness, was of probative value on the question whether
   the defendant had reasonable grounds to believe that the bank-
   rupt was insolvent. p. 248.
2. Evidence as to the inability of the bankrupt to pay its debts,
   together with the fact that its factory had been destroyed by
   fire prior to the alleged preferential payment, since which
   time it had not been a going concern, is *held* to sustain a
   finding that the bankrupt was insolvent at the time of the
   payment. p. 249.
3. So, also, evidence that prior to the payment the bankrupt's
   factory was destroyed by fire, after which the defendant was
   notified that the bankrupt was not responsible, together with
   the fact that delivery of the products of the bankrupt to de-
   fendant in payment of a debt was not in the usual course of
   business, is *held* to sustain a finding that the defendant had
   reasonable ground to believe that the bankrupt was insolvent
   at such time. p. 250.
3. Although mere inability to pay debts as they accrue does not
   constitute insolvency, continued inability to pay in the or-
   dinary course of business is apt to accompany insufficiency of
   assets, and proof of such fact is relevant on the question of
   insolvency. p. 249.

APPEAL from a judgment of the circuit court for Mil-
waukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Af-
firmed.*

This action is brought by a trustee in bankruptcy for the
recovery of money and the value of property delivered to
the defendant by the bankrupt under circumstances which
it is claimed make the payments preferential. The Aro-

matic Products Company was organized in 1919 with a capital of $5,000 for the manufacture of coumarin by special processes worked out by the employees of the company. The plant was located in Wauwatosa, Wisconsin, and about ninety per cent. of its produce was sent to the Palmolive Company in Milwaukee and was always paid for in cash, and the remaining portion of the produce of the factory was sold, as a rule, to a Chicago firm. In 1920 the company was reorganized with $50,000 in preferred stock and some non-par value common stock. The contracts and arrangements between the old and the new companies were not disclosed at the trial.

The Aromatic Products Company had a checking account with the First National Bank of Wauwatosa, and it was through the instrumentality of Mr. Gates, the cashier of this Wauwatosa bank, that the defendant bank was brought into business relations with the bankrupt company. In July, 1920, it seems that the Wauwatosa bank had reached the limit of the amount of indebtedness which they might carry for one customer, i. e. $13,000, and Mr. Gates requested the defendant bank to discount two notes for the Aromatic Products Company for $2,000 and $3,000 respectively. The credit of the Aromatic Products Company having been vouched for by Mr. Gates, the defendant bank discounted the two notes and they were paid in July and August when due. In September, at the request of Mr. Gates, the defendant again discounted two notes for the bankrupt for $5,000 each, the notes being made out to the order of the defendant bank, though the negotiation was made through Mr. Gates. On October 13, 1920, the plant of the Aromatic Products Company was destroyed by fire and the company ceased business other than to salvage what was possible out of the wreckage and to collect the insurance, which amounted to about $35,000 and which was deposited in the Wauwatosa bank. On November 10, 1920, a cashier's check of the Wauwatosa bank was drawn for the amount of $2,000

to the defendant bank, though not paid over to them until the 7th of December, when it was received by them as a payment on one of the two notes. On the same day, December 7th, Mr. Gates informed the defendant that the Aromatic Products Company had some coumarin which they had contracted to sell, and asked the defendant to take this for the remaining $3,000 due on the one note, as the Wauwatosa bank was short of cash. The defendant assented to this and the coumarin was delivered on the 9th and 11th of December. On the 11th of December the defendant received a cashier's check for $5,000 from the Wauwatosa bank and applied this to the remaining note. On December 29, 1920, the defendant received from a third party a note for $3,000 which represented a sale of the coumarin by the defendant bank to the third party, and this amount was credited on the first note on December 29, 1920. On December 30, 1920, an involuntary petition in bankruptcy was filed against the Aromatic Products Company.

The issues involved are whether the company was insolvent at the time the payments took place and whether the defendant bank had had notice or had reasonable cause to have known of the insolvent condition. An inventory of the company subsequent to the fire, established by the testimony of various witnesses, was offered in evidence. The defendant objected to this, as it did not, it claimed, satisfactorily explain certain deposits subsequently made and the books of the company were not available for the purpose of checking the items. Numerous witnesses testified to the fact that their bills had not been paid for some time, and there was evidence that the trade paper of the company had been frequently dishonored and that payments of negotiable paper were made by renewals in a large number of cases.

On the issue as to the defendant's knowledge or reasonable grounds for belief as to the insolvent condition of the company, the president of the defendant bank testified that

his dealings were upon the request of Mr. Gates of the Wauwatosa bank, who vouched for the credit of the company at that time; that he heard of the fire, but that Mr. Gates told him, and a circular from the Dun commercial agency stated, that the insurance covered the loss and that the company would pay out all right; that he supposed that the company was solvent and accepted the cashier's checks in good faith; that although it was not customary to take merchandise for money claims it had been done on several occasions; that on this occasion it had been done at the request of Mr. Gates, who stated that there was a contract for the sale of the coumarin and that the cash would be forthcoming in a few days, but that his bank was short of cash at the time and did not wish to forward the money; that he took the coumarin under the belief that this was true, but that he was later informed that the sale had fallen through and also learned that the value of the coumarin was less than the amount for which it had been received; that he sold it to a third person, who gave the defendant bank his note for $3,000, although it was understood that the bank should stand the loss occasioned by the inferior quality of the coumarin. The plaintiff introduced in evidence, over the objection of the defendant, a statement of the condition of the Aromatic Products Company on April 30, 1920, made by a certified public accountant and furnished the defendant bank's president in an entirely different transaction, but the contents of which the defendant bank's president admitted he knew. This statement showed that the company had a capital of only $5,000 and liabilities of $55,000; that the cash of the company was only $1,700, and that included in the assets was an item of $5,000 for the formulas and patents, and also $100 for an equitable interest in a Ford automobile. The defendant's president, Mr. Kay, admitted that he had known of a loss to the Aromatic Products Company occasioned by a flood in the summer and that he made no

investigation of the affairs of the company after the loss by fire otherwise than to ask Mr. Gates as to the solvency of the company and to read the circular sent around by the commercial agency. Mr. Stark, who had failed to collect a debt due him from the bankrupt for the amount of $155, testified that he warned the president of the defendant bank, after the fire, that the Aromatic Products Company was "no good" and that Mr. Kay promised to "tip him off" if the Aromatic Products Company should get sufficient funds to pay him his debt. Evidence was also introduced showing that the usual practice of noting on a note the amount paid was not followed in the case of the cashier's check for $2,000 and that the note when fully paid was not returned to the company; that the coumarin was transferred by the defendant bank to a third person, who gave his note to the bank in return, and that the note has been renewed eight times and nothing paid thereon. The man who delivered the coumarin to the defendant bank testified that he was ordered to hurry the consignment to the bank by a telephone call from one of the officers of the Aromatic Company in Chicago. The testimony showed that the president of the bank had practiced law and was familiar with the bankruptcy laws. The jury found that the Aromatic Products Company was insolvent on November 12, 1920, when the check for $2,000 was drawn, and also on December 11, 1920, when the coumarin was delivered; that each of these payments constituted a preference to the bank, and that on these dates the president of the bank had reasonable cause to believe that the payments would so operate. The court gave judgment for the plaintiff for the value of the coumarin and the $2,000. From this judgment the defendant bank appeals on the grounds that the statement of the financial condition of the Aromatic Products Company was hearsay and improperly introduced and because the court refused to direct a verdict in the defendant's favor.

For the appellant there was a brief by *Fish, Marshutz & Hoffman,* attorneys, and *Irving A. Fish,* of counsel, all of Milwaukee, and oral argument by *Irving A. Fish.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan,* attorneys, and *Ray T. McCann,* of counsel, all of Milwaukee, and oral argument by *Mr. McCann.*

Jones, J.    The first exception of the defendant relates to the reception as evidence of the statement of assets and liabilities contained in Exhibit 7.    There was no verification of its correctness, and it clearly was not substantive proof tending to show the insolvency of the Aromatic Products Company.    It was admitted by Mr. Kay that he had no reason to believe that the exhibit was incorrect.    We cannot say that it had no probative value as bearing on the question of whether the bank and its officers had reasonable grounds to believe that the Aromatic Company was insolvent.

One of the main objections raised by the defendant is that the whole of the evidence is insufficient to sustain the finding of the jury that the Aromatic Company was insolvent at the time the defendant received the payments.    There is little difference of opinion between counsel as to the law relating to the subject.    The statute prescribes that—

"Whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts," insolvency exists.    U. S. Comp. Stats. § 9585.

Counsel are agreed that under the statute the fact that a man is pressed and cannot pay his debts as they fall due does not constitute sufficient proof of insolvency, since it is common for both solvent and insolvent debtors to pay some of their debts and to leave others unpaid.    Persons with ample assets may be without current funds with which to pay their debts.    It is also true that in cases of this char-

acter it is incumbent upon the plaintiff to show the aggregate of the assets and the financial condition of the alleged insolvent. *McDonald v. Clearwater S. R. Co.* 164 Fed. 1007. Counsel for both parties presented lists and inventories tending to show the assets and liabilities of the Aromatic Company. Counsel for the plaintiff were willing to accept the balance sheet proposed by the defendant bank showing accounts payable, with some inconsiderable changes. Counsel for the plaintiff produced witnesses who testified as to the value of the assets contained in the statement, and there was considerable evidence tending to show that the liabilities of the corporation exceeded its assets by $20,000 or more. Counsel for the appellant lay stress on the fact that the books of the company were not produced by the trustee. It was proven that the trustee had never had possession of the books of the company and had not been able to find them. Besides the direct evidence of the insolvency there was the fact that the factory had been destroyed by fire on the 13th of October, 1920, and had not been a going concern since that event. Although it is true that mere inability to pay debts as they accrue does not constitute insolvency, it cannot be said that continued inability to pay debts has no bearing on the question. Such inability to pay debts in the ordinary course of business, long continued, is apt to accompany insufficiency of assets. There was a very large amount of proof of nonpayment of debts, both large and small, as to which creditors were pressing. Many of these were such debts as a company having sufficient assets would ordinarily pay. There was such an amount of testimony, direct and circumstantial, tending to prove insolvency on the part of the Aromatic Products Company that we see no good reason why the trial court should have disturbed the verdict of the jury on that subject.

The next point urged by the appellant is that there was not sufficient proof of knowledge by the officers of the de-

fendant bank nor of reasonable cause to believe there was insolvency. Here again counsel differ but little on the legal question involved. They concur in the view that a reasonable cause to suspect that a person is insolvent is not sufficient. *Grant v. National Bank,* 97 U. S. 80; *In re F. M. & S. Q. Carlile,* 199 Fed. 612; *Sumner v. Parr,* 270 Fed. 675. And it is agreed that the intent of the bankrupt is immaterial, and that the question is whether the person receiving the preferential payments had knowledge of the insolvency or reasonable cause to believe that it existed. Debtors often have financial difficulties which they hope to overcome while they have sufficient assets to meet their indebtedness, and there may be some grounds of suspicion that a debtor is in failing financial circumstances without any well founded belief. In this case the defendant's counsel rely on the facts that favorable reports had been received and that the company's stock was fully insured. But there was direct evidence produced by the plaintiff to the effect that Mr. Stark, soon after the fire, had notified Mr. Kay that the company was not responsible. Mr. Kay was an attorney and familiar with the law as to preferences. It is clear that the transaction in which the bank received the coumarin for the debt and the subsequent transactions in respect to it were not in the usual course of business. It was not necessary for the plaintiff to show actual knowledge by the defendant of the insolvency. It was only necessary to prove that there was reasonable cause to so believe.

"A person has reasonable cause to believe when such a state of facts is brought to his notice and attention respecting the affairs and pecuniary condition of his debtor as would lead a prudent business man of intelligence to the conclusion that the debtor was then insolvent, and that the payment then made to him (such creditor) would, if retained, operate to give him a greater percentage of his debt than other creditors of the same class would receive." *Smith v. Powers,* 255 Fed. 582, 586; *In re Star S. B. Co.* 265 Fed. 133; *Goetz v. Zeif,* 181 Wis. 628, 195 N. W. 874.

The jury found for the plaintiff on this issue and their finding was approved by the court. It cannot be said that there was not credible evidence to sustain the finding.

*By the Court.*—Judgment affirmed.