L. B. SUTHERLAND, *Trustee, v.* R. W. HONAKER *et al.*

(No. 8595)

Submitted January 26, 1938. Decided March 8, 1938.

*Arthur F. Kingdon,* for appellant.
*John R. Pendleton,* for appellees.

HATCHER, JUDGE:

The trustee in bankruptcy of a corporation seeks a decretal judgment against the officers of the bankrupt in the amount of its funds applied by them to certain of its debts upon which they were sureties. Proof was taken and the bill dismissed.

Boggs and Goodall, Inc., was a corporation engaged in the furniture business. It was operated by defendants Boggs and Goodall and was owned by them and defendant Honaker, who was the principal stockholder. The three were directors and Honaker was president. The corporation, upon being pressed by some of its creditors, mailed to all of them on May 3, 1935, a circular letter, prepared by Honaker, advising that because of the sickness of Boggs, it was behind in collections; that its accounts receivable were secured; its assets far exceeded its liabilities; and, if given time to collect, it could pay its debts. Following this, Honaker assumed charge of the corporation. He instituted vigorous sales and collection campaigns which brought the corporation approximately $8,000.00, of which between May 8, and 28, he paid about $7,000.00 on two of its notes, endorsed by defendants. On May 27, the corporation's stock of merchandise was sequestered under a distress warrant for rent, long in arrears. The bankruptcy proceeding was instituted June 4th. A schedule was filed therein on June 20th by the corporation, prepared by Goodall with the assistance of counsel, and signed by Honaker, which listed liabilities amounting to $26,935.75, and assets amounting to $24,295.66. The corporation was adjudicated a bankrupt June 27th.

An insolvent, as defined by the Bankruptcy Act, is a person, the aggregate of whose property "at a fair valuation", is insufficient to pay his debts. U. S. Code, Title

11, section 1 (15). Boggs submitted herein a schedule as of June 1, 1935, which showed that the corporation then had net assets of $3,724.84. But included in his list of assets were what he termed "suspended accounts" amounting to $4,528.26, of which some ran back to 1921 and all had passed "the credit limit." He claimed these accounts were not "entirely uncollectable", but ventured no estimate of their *fair valuation*. His schedule, therefore, does not meet the prescription of the Act. Inability to pay debts in the ordinary course of business is not mentioned in the definition above. But since such inability, continued, is due ordinarily to insufficient assets, it is relevant on the question of insolvency. *Schwemer* v. *Bank*, 185 Wis. 243, 201 N. W. 398. When this inability is considered in connection with the financial collapse of the instant corporation on May 27th, and with its solemn admission of insolvency to the Bankrupt Court in June, there should be no doubt of its technical insolvency during May, when the payments were made on the two notes. *Bielaski* v. *Bank*, 14 Fed. Supp. 971.

The Bankruptcy Act defines a preference as a payment by an insolvent, within four months of bankruptcy proceedings, to a creditor whereby he obtains a greater percentage of his debt than other creditors of the same class. The statute also provides that if the person to whom such preferential payment is made shall then have "reasonable cause to believe" that he is receiving a preference, it shall be voidable by the trustee and he may recover the payment. U. S. Code, Title 11, section 96. The federal decisions treat a surety of the insolvent as a creditor and a payment in such case which relieves the surety, as a payment to him. "Indorsers and guarantors of notes and obligations of a bankrupt are creditors within the Bankruptcy Act * * * relating to preferences." *Smith* v. *Coury*, 247 Fed. 169. Accord: *Chapman* v. *Hunt*, 248 Fed. 160; *Cohen* v. *Goldman*, 250 Fed. 599, and 261 Fed. 672; *In re Schleicher Printing Corporation*, 62 Fed. (2d) 503. Honaker denied intention to prefer the two note holders who received the $7,000.00, saying "I thought we were going to pay all of them (the creditors)." His

*thought* thereon is entitled to little, if any, consideration, because when asked what was "the approximate total indebtedness" of the corporation when he took charge in May, he answered unequivocally "I don't know." Moreover, his thought, even if informed, would not be the test of defendants' liability. The buoyancy of a debtor's hope was long ago authoritatively discountenanced. See *Grant* v. *Bank,* 97 U. S. 80, 24 L. Ed. 971. The personal belief of a debtor in his solvency is not admitted at all in Pennsylvania. *Schuette* v. *Swank,* 265 Pa. 576, 109 Atl. 531. The "reasonable cause to believe" contemplated by the federal statute, is information which would cause a man of ordinary prudence to believe that the debtor was not solvent, or at least have put such a man on inquiry as to facts which would show insolvency. *Grandison* v. *Bank,* 231 Fed. 800; *Schoenbrod* v. *Trust Co.,* 238 Fed. 775. Honaker was not permitted to close his eyes to the condition of the corporation. *Wigginton* v. *Auburn Wagon Co.,* 33 Fed. (2d) 496; *Hatfield* v. *Lamb,* 117 W. Va. 275, 185 S. E. 229. The law implies his intention to prefer, and permits recovery. "Principal stockholder and president of insolvent corporation, who within four months prior to filing of bankruptcy petition brought about payment of liabilities of bankrupt for which he was liable as guarantor or surety, held to have, in effect, created preference, amount of which was recoverable from him by trustee in bankruptcy under Bankruptcy Act." *Walker* v. *Wilkinson,* 3 Fed. (2d) 867. Accord: *In re Schleicher Printing Corporation, supra; Irving* v. *Tr. Co.,* 13 Fed. Supp. 235.

The trustee would also have appellees held responsible for the discounts allowed on accounts of the furniture company (to secure cash), upon the ground that this was gross waste of company assets. The circuit court denied this demand, saying: "A statement appears in the file * * * which lists the accounts upon which discounts were allowed and which shows that these discounts averaged about 36%. In view of the character of the accounts upon which these discounts were allowed I am convinced that the defendants should not be held liable for permitting

these discounts. If Mr. Honaker had employed collectors or instituted actions to collect it is doubtful if he would have realized as much as he did by the method he pursued, and it would seem that a merchant has a right to put his accounts out for collection when he considers that a necessity therefor has arisen." We concur in this view and affirm the ruling thereon.

The decree is reversed, so far, and so far only, as it exonerated the appellees of liability for the funds applied by them to debts of the bankrupt upon which they were sureties, and a decretal judgment therefor in favor of the trustee is rendered here.

*Affirmed in part; reversed in part; and decretal judgment rendered for appellant.*