### In re BIG THREE TRANSPORTATION, INC., Debtor.

### James G. MIXON, Trustee, Plaintiff,

### v.

### MID–CONTINENT SYSTEMS, INC., E. Sidney Groves, Lehman D. Blackshear and Ronnie D. Sleeth, Defendants.

Bankruptcy No. FA 80–114.
Adv. No. AP 82–164.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Nov. 18, 1983.

James G. Mixon, Bentonville, Ark., for plaintiff.

Allen W. Bird, II, Little Rock, Ark., for defendant, Mid-Continent.

Richard L. Miller and F.H. Martin, Fayetteville, Ark., for defendants Groves and Lehman.

Thomas B. Burke, Fayetteville, Ark., for defendant Sleeth.

## MEMORANDUM OPINION

CHARLES W. BAKER, Bankruptcy Judge.

Before the Court is an Adversary Proceeding brought by the Trustee to set aside certain alleged preferential transfers in the amount of $170,000.00 paid by the debtor to Mid-Continent Systems, Inc. The Complaint also requests judgment against E. Sidney Groves, Lehman D. Blackshear and Ronnie D. Sleeth. The Complaint came on for a hearing on December 9, 1982, and was continued until and concluded on June 24, 1983. The Trustee, Hon. Jim Mixon, appeared *pro se*. Hon. F.H. Martin appeared on behalf of Lehman Blackshear. Ronnie D. Sleeth was represented by Hon. Tom Burke. Hon. Tom Thrash and Hon. Allen Bird represented Mid-Continent Systems, Inc. (hereinafter Mid-Continent).

The Trustee called Lehman D. Blackshear, Phillip Ames, Daniel Neil McCoy, and Kenneth W. Lance as witnesses and introduced some 27 exhibits. Mr. Thrash presented testimony from Lehman Blackshear, Joe Bailey, Paul A. Maestri, Phillip Ames, and Donald Robert Lafferty. Mr. Bird introduced testimony from Dalton Gilbert Seago, Sr. During the trial of the case, a Motion for Directed Verdict was granted, without objection from the Trustee as to Defendant Ronnie D. Sleeth. The Trustee never obtained service as to the Defendant E. Sidney Groves, thus, the Complaint is dismissed without prejudice as to him.

The Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1471 and § 1481, 11 U.S.C. § 105, and General Order No. 24 of the United States District Court for the Eastern and Western Districts of Arkansas.

The Court, having researched the issues presented and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1) Big Three Transportation, Inc. (hereinafter "Big Three") is an Arkansas corpora-

tion owned by Lehman Blackshear, Sidney Groves, Ronnie Sleeth, Bud O'Dell, and Tommy Thompson, Jr.

2) Lehman Blackshear was an officer and member of the Board of Directors as well as a thirty percent (30%) shareholder in Big Three.

3) In 1977, Mid-Continent agreed to extend a line of credit to Big Three upon the condition that Sleeth, Groves, and Blackshear guarantee the indebtedness of Big Three to Mid-Continent. (Trustee's Exhibit 4).

4) Blackshear was aware of monthly balance sheets and profit-loss statements prepared by Phillip Ames, Big Three's accountant, which showed steadily increasing losses from January 31, 1980 through July 30, 1980. (Trustee's Exhibits 5 through 9).

5) In December of 1979, Big Three had a positive net worth of $50,000. The company still had a positive net worth in early January 1980, but showed a negative net worth by the end of January, 1980, from which it never recovered.

6) The figures on the financial statements compiled by Phillip Ames were based on actual cost minus depreciation (book value) as opposed to fair market value. (Trustee's Exhibits 5 through 9).

7) After the first six months of 1980, Big Three's net operating loss was $1.2 million. (Plaintiff's Exhibit 25).

8) Big Three's liabilities exceeded its assets on the following dates and by the following amounts:

| March 7–10, 1980 | $199,000 |
| March 31, 1980 | $200,000 |
| May 2–5, 1980 | $310,000 |

9) On March 7, 1980 Big Three conveyed a check for $20,000 to Mid-Continent. On March 31, 1980 Mid-Continent received a $100,000 check from Big Three. On May 2, 1980 Big Three conveyed a check for $50,000 to Mid-Continent.

10) The $20,000 payment on March 7, 1980 was made within forty-five (45) days of the January 29, 1980 statement reflecting current charges of $64,055.56. The $100,000 check of March 31, 1980 was within forty-five (45) days of the March 4, 1980 statement showing a balance due of $20,819.00.

11) Daniel Neil McCoy, a transportations consultant, represented a group of investors in attempting to arrange the purchase of Big Three in June of 1980. Negotiations for the sale broke down due to, among other things, the Creditors' Committee's belief that the proposed consideration was insufficient. It was at this point that the Creditors' Committee filed an Involuntary Petition against Big Three (August 20, 1980).

## CONCLUSIONS OF LAW

1) The Trustee has the burden of proving that transfers are preferential. *Constructora Maza, Inc. v. Banco de Ponce*, 616 F.2d 573 (1st Cir.1980); *Wilkie v. Brooks*, 515 F.2d 741 (6th Cir.1975).

2) Lehman Blackshear qualified as an insider as defined by 11 U.S.C. § 101(25)(B)(i) and (ii).

3) The Code requires that the insider/transferee have "reasonable cause to believe the debtor was insolvent at the time of such transfer" before the transfer may be avoided. 11 U.S.C. § 547(b)(4). It is difficult to formulate any well defined rule for finding "reasonable cause." The criteria most often relied upon by the courts include a transferee's knowledge of "undercapitalization of the debtor, sales below cost, checks drawn on a bank account and payment refused by reason of insufficient funds, a consistent pattern of overdrafts, operating losses, irregular, unusual, or criminal conduct, secretiveness, slow payment, collection measures taken by other creditors, rescue of the debtor from embarrassment by friends or relatives and reliance on financial statements or reports." *Dean v. Planters National Bank*, 176 F.Supp. 909, 914 (1969). Almost all these elements are present in the case at bar. For these reasons, as well as the conclusions listed below, the Court finds Lehman

Blackshear, an insider/guarantor, had reasonable cause to believe the debtor was insolvent at the time of these payments to Mid-Continent.

A. The book value of the assets of the debtor is deemed by the Court to be the best evidence of the financial status of the debtor under the circumstances of this case, i.e., a significant portion of the debtor's assets are recently acquired. The testimony of an expert accountant may be received on this issue. *Boston National Bank v. Early*, 17 F.2d 691 (1st Cir.1927). The statement of a certified public accountant, not verified, furnished the president of the defendant bank several months before the alleged preference in an entirely different transaction, is not admissible on the question of insolvency, but is admissible on the question as to whether the defendant had reasonable cause to believe that the debtor was insolvent. *Schwemer v. Milwaukee Commercial Bank*, 185 Wis. 243, 201 N.W. 398 (1924).

B. It is true, as Mid-Continent points out, that the assets of the debtor should include the value of the debtor's ICC operating authority. The Court simply cannot accept, however, Mid-Continent's estimate of $400,000 to $500,000 as the authority's value. The Court is not persuaded the operating authority would have any value in excess of book value ($128,098) and doubts that the authority is even worth that amount. The best evidence of the value of the operating authority is the amount of income it is able to generate. Here, debtor was operating at ever increasing losses in spite of the fact it possessed this so-called "valuable" authority.

C. The Court ascribes no value to the contracts to purchase the twenty-five (25) trucks and twenty-five (25) trailers. For these contracts to be an asset of the estate, Mid-Continent would have to have shown that the debtor had the capacity to take advantage of these contracts and, obviously, it did not. If the contract rights were so valuable, the debtor could have effectuated an assignment of those valuable rights, and debtor did not do so.

D. The Court does not credit Daniel Neil McCoy's opinion that Big Three was worth more than the company's balance sheet reflected. Mr. McCoy obviously had no expertise to give such an opinion. In addition, Mr. McCoy's testimony, in general, lacks credibility with the Court. The testimony of the certified public accountant as to the value of the assets and net worth of the debtor is considerably more reliable than that of Mr. McCoy. In this regard, *Matter of Briarbrook Development Corp.*, 11 B.R. 515, 4 C.B.C.2d 871 (Bkrtcy.1981), cited by Mid-Continent, is inapposite as, there, the accountant's testimony was found by the Court to be incredible, and for good reason.

E. Furthermore, the Court rejects Mid-Continent's contention that the issue of solvency must necessarily be resolved by estimates of the fair market value of the debtor's estate. Unaudited financial statements may be admissible as the best available evidence, and it is for the trier of fact to assess the accuracy of such statements. *In Re Roco Corp.*, 701 F.2d 978 (1st Cir.1983); *Braunstein v. Massachusetts Bank and Trust Co.*, 443 F.2d 1281 at 1284 (1st Cir.1971).

4) The payments by the debtor of the three checks (Trustee's Exhibits 13, 14, and 15) constitute preferential transfers within the meaning of 11 U.S.C. § 547. The transfers were to or for the benefit of a creditor, the insider/guarantors. The payments reduced the insider/guarantors' contingent liability to Mid-Continent under the guaranty. 11 U.S.C. § 101(9) and 502(e)(2). The insolvency of the debtor and antecedency of the debt have already been discussed and established. (See Conclusion No. 2). 11 U.S.C. § 547(b)(4)(B), then, enlarges the preference period to between 90 days and one year thereby encompassing all three payments. Such transactions are clearly preferential transfers. *Cooper Petroleum Co. v. Hart*, 379 F.2d 777 (5th Cir.1979); *Kobusch v. Hand*, 156 F. 660 (8th Cir.1907),

*cert. denied*, 209 U.S. 547, 28 S.Ct. 758, 52 L.Ed. 720 (1908).

5) It is true that the property transferred must be included among the debtor's assets when its insolvency at the time of the transfer is at issue. *In Re: Utrecht Coal Co.*, 63 F.2d 745 (2d Cir.1933). Notwithstanding that inclusion, however, the debtor was still insolvent on the dates these transfers occurred.

6) 11 U.S.C. § 547(c) provides:

The Trustee may not avoid under this section a transfer ... (2) to the extent that such transfer was (A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee; (B) made not later than 45 days after such debt was incurred; (C) made in the ordinary course of business or financial affairs of the debtor and the transferee, and (D) made according to ordinary business terms.

Pursuant to this section the $20,000 check of March 7, 1980 in payment of the $64,055.56 balance is not preferential. Likewise, $20,819.00 of the $100,000 payment of March 31, 1980 is not preferential. The $20,819 figure is the balance due on the account reflected in the March 4, 1980 statement.

Mid-Continent has also argued that the Trustee has failed to maintain his burden by not proving that Mid-Continent received more by this alleged preferential payment than it would have received in a Chapter 7. The assets of Big Three are valued at $5.6 million in the schedules. Debtor's equity therein was listed at $1.5 million. Liquidation value would, doubtlessly, be even less than that. When these assets are weighed against the scheduled $9 million in secured debt and $2 million in unsecured debt, it is clear that by receiving half of its $340,000 unsecured claim via the transfers in question, Mid-Continent received more than it would have in a Chapter 7 liquidation. The June 7, 1982 Order converting the case to a Chapter 7 noted that the Trustee possessed cash in the sum of $454,983.01 to pay priority, administrative and general unsecured claims. With $2 million in general unse-cured claims in addition to attorney's fees, accountant's fees, auctioneer's commission, and other priority claims, Mid-Continent could not have received $170,000 of its $340,000 claim in a Chapter 7.

8) With regard to Mid-Continent's final argument, each guarantor is liable on his obligation for the entire amount of the debt to Mid-Continent (Trustee's Exhibit 4). The fact that two of the insider/guarantors herein have been dismissed as defendants does not diminish the liability of Lehman Blackshear on his guaranty nor does it diminish the amount owed by Mid-Continent to the Trustee.

9) Finally, the Court will address the most difficult and critical issue in this case and that is whether judgment for the preferential transfers may be had against Mid-Continent, as "initial transferee," pursuant to 11 U.S.C. § 550(a)(1). The Court is well aware of decisions from other Bankruptcy Courts which have held it inequitable to not allow the initial transferee to keep whatever money was paid to it during the period of more than ninety (90) days but less than one year before filing and allow the trustee to recover only from those insiders/guarantors for whose benefit such payments were made. See *In Re Church Buildings and Interiors, Inc.*, 14 B.R. 128, 5 C.B.C.2d 74 (Bkrtcy.W.D.Okla. 1981); *In Re Duccilli Formal Wear, Inc.*, 24 B.R. 699, 8 B.C.D. 1180 (Bkrtcy.S.D. Ohio 1982); *In Re Cove Patio Corp.*, 19 B.R. 843 (Bkrtcy.1982). Invariably, these cases rely on 4 *Collier on Bankruptcy* § 550.02 (15th Ed.1981), which contends that in such a fact situation recovery should be restricted to the insider/guarantor and the creditor (here, Mid-Continent) should be protected. "Otherwise a creditor who does not demand a guarantor can be better off than one who does." *Collier, supra.* The Court appreciates that analysis of what is apparently perceived to be an inequitable result.

This Court, however, refuses to overlook the unambiguous language of 11 U.S.C. § 550(a)(1):

§ 550. Liability of transferee of avoided transfer. (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) *the initial transferee of such transfer* or the entity for whose benefit such transfer was made; *(emphasis supplied)*

That language is susceptible of no other interpretation than the result reached herein. The drafters of the Code could very easily have omitted the "initial transferee" language. Since they obviously did not, however, drafters of loan guaranty agreements will have to consider the literal meaning of § 550(a)(1) in advising their lending institution clients.

As one author in the *American Bankruptcy Law Journal* has stated:

As hard as one searches, one is unable to uncover any material evidence in the Code or its legislative history that Congress intended paragraph 550(a)(1) to operate less than literally merely because of one of the potential defendants designated in that paragraph supplies the factual predicate for avoiding a transfer. In fact, in the original bills approved by the Senate and the House of Representatives, each version of Section 550 mandated recovery from the "initial transferee" alone.[1]

Pitts, "Insider Guaranties and the Law of Preferences," 55 *American Bankruptcy Law Journal,* 343, 347 (1981).

Therefore, the Court hereby enters judgment for the Trustee in the amount of $129,181 against Mid-Continent Systems, Inc. and Lehman Blackshear.

SO ORDERED.

---

1. S.2266, 95th Cong.2d Sess. § 101 (1978) (proposed 11 U.S.C. § 550(a)(1); H.R. 8200, 95th Cong. 1st Sess. § 101 (1977) (proposed 11 U.S.C. § 550(a)(1)). In the precursor to Section 550 proposed by the Commission on the Bankruptcy Laws of the United States, the primary target of the trustee's recovery was likewise the initial transferee. REPORT OF THE COMMISSION ON THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R.Doc. No. 93–137, 93rd Cong. 1st Sess., pt. II, at 178 (1973) (§ 4–409(a)). In explaining this section, the Commission stated that it "covers all initial transferees of recoverable property, *not just those preferred.*" id at 180 note 2 *(emphasis supplied).*