In re IRFM, INC., a California corporation, formerly dba Irvine Ranch Farmers Market, Debtor.

Robert P. MOSIER, Chapter 7 Trustee, Plaintiff,

v.

The IRVINE COMPANY, a Michigan corporation, Defendant.

Bankruptcy No. SA 88–04423 JR.
Adv. No. SA 91–3951 JR.

United States Bankruptcy Court, C.D. California.

March 24, 1992.

David A. Leipziger and Jess R. Bressi of Cox, Castle & Nicholson, Irvine, Cal., for defendant.

Michael G. Spector of Fabozzi, Prenovost & Normandin, Santa Ana, Cal., for plaintiff.

## MEMORANDUM OPINION

JOHN E. RYAN, Bankruptcy Judge.

Trustee filed an adversary complaint seeking to recover payments made to defendant as the initial transferee under Bankruptcy Code (the "Code") § 550(a)(1). Trustee's complaint includes claims based on Code § 547(b) and seeks recovery of payments that occurred between 90 days and one year prior to the filing of debtor's bankruptcy petition (the "insider period").

Defendant filed a motion to dismiss and/or strike for failure to state a claim portions of trustee's complaint alleging preferential payments during the insider period. After a hearing on January 2, 1992, I took the matter under submission.

### JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Title 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).

### STATEMENT OF FACTS

Debtor, IRFM, Inc. (formerly the Irvine Ranch Farmers Market), filed a voluntary petition under Chapter 11 of the Code on July 22, 1988. The case was later converted to Chapter 7 on approximately October 3, 1989.

Defendant, debtor's lessor on certain commercial property, received payments totalling $1,289,040.70 during the year preceding the filing of debtor's petition. Debtor's president had guaranteed debtor's lease payments.

Trustee seeks to recover all payments made within one year of the filing of the bankruptcy. Defendant's motion to dismiss and/or strike asserts that trustee's

attempt to recover payments made to defendant during the insider period relies solely on the Seventh Circuit's interpretation of §§ 547 and 550 as set forth in *Levit v. Ingersoll Rand Financial Corporation (In re V.N. Deprizio Co.)*, 874 F.2d 1186 (7th Cir.1989), and that *Deprizio* is incorrectly decided.

## DISCUSSION

While three circuits have adopted the *Deprizio* analysis [1], the Ninth Circuit has not decided the *Deprizio* issue.

The Seventh Circuit's decision in *Deprizio* held that a transfer by a debtor made during the insider period to a non-insider creditor who holds a guarantee from an insider of a debtor is an avoidable preference under § 547(b) [2], which can be recovered by the trustee from the non-insider creditor under § 550(a) [3]. 874 F.2d at 1201.

In reaching its decision, the *Deprizio* court rejected the "two-transfer" theory and the equity and policy arguments asserted by the non-insider creditor. Instead, the court applied a "plain language" analysis to the avoidance and recovery functions of §§ 547 and 550. The Supreme Court set forth this approach to statutory construction in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct 1026, 103 L.Ed.2d 290 (1989).

The bankruptcy court in *Deprizio* used the two-transfer theory to deny recovery against the non-insider creditor for transfers during the insider period [4]. *Id.* at 1195–6. The two-transfer theory holds that a transfer occurs with each payment to the non-insider creditor holding a guarantee from an insider, and a separate, distinct transfer also takes place with each "benefit received" by the insider guarantor that results from each payment to the non-insider creditor. Each "transfer" is then separately analyzed as a possible preference. The bankruptcy court adopted this approach in denying recovery against the non-insider creditor for the transfers made during the insider period based on the creditor's non-insider status. In rejecting this approach, the Seventh Circuit noted that the Code equates a "transfer" to a payment: [5]

---

1. In addition to the Seventh Circuit's decision in *Deprizio,* the Sixth Circuit in *In re C–L Cartage Company,* 899 F.2d 1490 (6th Cir.1990), and the Tenth Circuit in *In re Robinson Brothers Drilling, Inc.,* 892 F.2d 850 (10th Cir.1989) (affirming the judgment of the district court and adopting that opinion in its entirety as reported at 97 B.R. 77), have also adopted the rationale of *Deprizio.*

2. Section 547(b) provides:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
 (1) to or for the benefit of a creditor;
 (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
 (3) made while the debtor was insolvent;
 (4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
 (5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

3. Section 550 provides:
 (a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
 (2) any immediate or mediate transferee of such initial transferee.

4. Code § 101(54) defines a transfer as: "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption; ..."

5. The Seventh Circuit's rejection of the "two-transfer" theory affirmed the district court's reasoning that, "the Code defines 'transfer' from a payer's point of view.... Only a payer 'dispos[es] of or part[s] with property.' A payee receives or acquires property. If Congress had wanted a transfer to occur whenever someone receives a benefit, it could have defined 'transfer' as 'receiving or acquiring property or an interest in property.'" 86 B.R. 545, 551 (N.D.Ill. 1988).

a transfer is a disposition of property. Section 547 and 550 both speak of a transfer being avoided; avoidability is an attribute of the transfer rather than of the creditor. While the lenders want to define transfer from the recipients' perspectives, the Code consistently defines it from the debtor's. A single payment therefore is one "transfer", no matter how many persons gain thereby.

*Id.* at 1195–6 (footnotes omitted).

The court then applied a two-step analysis, first focusing on whether there were preferential transfers under § 547(b). The court affirmed the district court's determination that there were preferential transfers. It found that the insider guarantor was a creditor [6] of the debtor who, by reducing his potential obligation as guarantor, had benefitted from the payments to the non-insider creditor. Since the guarantor was an insider of the debtor, the reach-back period was one year as provided in § 547(b)(4)(B). *Id.* at 1201.

The court then turned to § 550(a) and, relying on its plain language, determined that the trustee could recover against the non-insider creditor as the "initial transferee" of the preferential transfers. *Id.* In other words, the payments made to the non-insider creditor for the period up to one year prior to the filing of the petition in bankruptcy were made for the benefit of the insider guarantor and were preferential, avoidable and recoverable from the non-insider creditor.

The court rejected the non-insider creditor's argument that since the legislative history gave no helpful guidance, Congress intended to preserve the pre-Code practice of only allowing recovery from those parties to whom the transfer represented a preference. *Id.* at 1196. The court concluded that "[w]hen Congress makes wholesale changes in the text and structure

of the law, it is fatuous to pretend that a silent legislative history means that existing practices should continue unchanged." *Id.* It then noted that separating the identification of voidable transfers (§ 547) from the identification of who must pay (§ 550) in the 1978 Code was "a structural change with no antecedents in the 1898 Act." [7] *Id.* Therefore, finding no long standing policy concerning the length of a preference recovery period as to outsiders, the court concluded that applying an extended recovery period to an non-insider creditor "is not inconsistent with the structure of the Code and does not subvert any of its functions." *Id.* at 1197.

Finally, in rejecting "equity" and "policy" arguments, the Seventh Circuit commented,

[r]ules of law affecting parties to voluntary arrangements do not operate "inequitably" in the business world—at least not once the rule is understood. Prices adjust. If the extended preference period facilitates the operation of bankruptcy as a collective debt-adjustment process, then credit will become available on slightly better terms. If a longer period has the opposite effect, creditors will charge slightly higher rates of interest and monitor debtors more closely. In either case creditors will receive the competitive rate of return in financial markets—the same risk-adjusted rate they would have received with a 90–day preference-recovery period.... At all events, in what sense is it "inequitable" to recapture payments to creditors that may have been favored only because payment reduced insiders' exposure (recall that insiders select which debts to pay first), then distribute these monies according to statutory priorities and contractual entitlements? In what

---

**6.** Both the House Report and the Senate Report on the Reform Act of 1978 indicate that a creditor includes, "[a] guarantor of or surety for a claim against the debtor, ... because he holds a contingent claim against the debtor that becomes fixed when he pays the creditor whose claim he has guaranteed or insured." HR Rep. No. 595 95th Cong., 1st Sess. 309–310 (1977); *see also,* S.Rep No. 989 95th Cong. 2nd Sess. 22

(1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5808.

**7.** Citing *Ron Pair Enterprises,* 109 S.Ct. 1026, the court noted that "changes of this character show that pre–1978 practice is not a useful guide to interpreting the relation between §§ 547 and 550." 874 F.2d at 1197.

sense is it "inequitable" to require the outside lenders to pursue the inside guarantors for any shortfall, when they bargained for exactly that recourse?

*Id.* at 1198 (citation omitted).

The court concluded that since Congress had provided specific protections through § 547(b)(5) and § 547(c) for situations that concern most lenders, arguments of "equity" or "policy" should not be used to defeat a trustee's claims. *Id.* at 1200. A court is, therefore, not free to exercise its will under the equity umbrella when the result conflicts with the law as written by Congress. As courts of equity, Congress has granted bankruptcy courts substantial powers to resolve matters within its jurisdiction. In return, Congress expects the bankruptcy courts to apply the law as set forth in the Code and not to reshape it to one's personal liking in the name of equity. Rather, equity should serve as a tool in applying the law fairly.

This approach to statutory interpretation is consistent with the methodology mandated by the Supreme Court in *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

*Ron Pair* involved the interpretation of Code § 506(b)[8] to determine whether an oversecured, non-consensual lienholder was entitled to post-petition interest, or whether the pre-Code judicial practice of limiting the right of post-petition interest to consensual lienholders continued to apply. *Id.* at 240, 109 S.Ct. at 1030. The court explained that,

> [i]n such a substantial overhaul of the system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.

*Id.* at 240–41, 109 S.Ct. at 1030.

The Court then turned to § 506(b) and held that "where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *Id.* at 241, 109 S.Ct. at 1030 (citation omitted). Upon concluding that the plain language of § 506(b) controlled, the Court provided one qualification to its plain meaning analysis: "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Id.* at 242, 109 S.Ct. at 1031 (citation omitted). The Court then explained that a situation which produces such a result is one where a literal interpretation of the statute creates a conflict with other state or federal law.[9]

■ The Seventh Circuit's analysis in *Deprizio* follows the Supreme Court's man-

**8.** Code § 506(b) reads:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.
>
> (c) The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

**9.** The Court then proceeded to illustrate when the plain reading of a statute would be "demonstrably at odds" with the intent of its drafters, using *Midlantic National Bank v. New Jersey*

*Dept. of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), and *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986) as examples. *Midlantic* involved interpretation of a trustee's power to abandon property of the estate under § 554(a) in violation of state health and safety laws, while *Kelly* involved consideration of the dischargeability of a restitution obligation imposed as part of a state criminal sentence under § 523(a)(7). The Court noted that "[e]ach [case] involved a situation where bankruptcy law, under the proposed interpretation, was in clear conflict with state or federal laws of great importance," and concluded that in such cases it was appropriate for a court to determine whether Congress has "expressed an intent to change the interpretation of a judicially created concept in enacting the Code." 489 U.S. at 245, 109 S.Ct. at 1032. The interpretation in *Deprizio* of §§ 547 and 550 does not conflict with any other state or federal law.

date in *Ron Pair.*[10] The language of § 550(a)(1) is clear that the trustee may recover from the initial transferee for the benefit of the estate the property or its value in an avoidable transfer under § 547. Section § 547(b) determines whether the transfer is avoidable, not who must pay. The Seventh Circuit considered the possibility that the plain language of § 547(b) may be at odds with the intent of its drafters, but it found no long standing judicial policy concerning the length of the preference recovery period for outsiders. *Deprizio,* 874 F.2d at 1197. Interestingly, no prior policy existed regarding a separate recovery period for non-insider creditors because, prior to its enactment in § 547(b)(4), insiders and outsiders were treated alike.

 The Seventh Circuit correctly concluded that applying the one year recovery period to a transaction involving a benefit to an insider creditor and allowing recovery by the trustee against the non-insider creditor (initial transferee) was consistent with the Code. Furthermore, the *Deprizio* decision facilitates the Code's policy of equal distribution to creditors, notwithstanding the non-insider creditor's self-serving appeal for equity. As stated above, bankruptcy courts are not free to ignore clear statutory language. *See, e.g., Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Appeals to equity should be "used to protect creditors as a group rather than one creditor at the expense of other creditors in its class." Nussbaum, *Insider Preferences and the Problem of Self–Dealing Under the Bankruptcy Code,* 57 U.Chi.L.Rev. 603, 612 (1990).[11]

Defendant further asserts that *Deprizio*'s statutory analysis abrogates the distinction between non-insider and insider creditors which Congress carefully set forth for in § 547(b)(4)[12], and that the distinction of "treatment of non-insider and insider initial transferees set forth in Section 547 avoidance sections are not modified by, and carry over to, the Section 550 recovery provision." (Def.'s Ntc. of Mot. and Mot. to Dismiss and/or Strike; Mem. of P. & A. in Supp. at 9–10.)

In support, defendant cites *In re Performance Communications, Inc.,* 126 B.R. 473 (Bankr.W.D.Pa.1991), which concluded that *Deprizio* analyzed § 547 and § 550 in isolation from each other, misapplying the avoidance scheme:

> [t]he court construes section 547(b) without regard for its relationship to other parts of the Code and arrives at the conclusion that *any* transfer may be avoided, provided that the conditions therein prescribed are met. After it arrives at this result, the Court then construes Section 550(a), without regard for its relationship to other parts of the Code, and arrives at the conclusion that recovery of an avoided transfer may be had from the initial transferee even if said transfer was not a preference as to it.

126 B.R. at 476.

Defendant's argument that § 547(b)(4) draws a distinction in the treatment of non-insider and insider initial transferees is without merit. Section 547(b) defines what is an avoidable transfer. It does not refer to "transferees". Subsection 547(b)(4) sets forth different preference periods for

---

**10.** The Supreme Court has subsequently re-emphasized that when the plain language of a statute is clear, that the sole function of the courts is to enforce it according to its terms. *See, e.g., Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 2200, 115 L.Ed.2d 145 (1991); *Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 530, 116 L.Ed.2d 514 (1991).

**11.** "Indeed, this policy arises from the very nature of the collective proceeding. See, for example, HR Rep No 95–595 at 177–78 . . .; House Judiciary Committee, Analysis of HR 12889, 74th Cong. 2nd Sess 187 (1936) (discussing equality of distribution as a prime motive of

Chandler Amendments to 1898 Act.) See also *In re Anders,* 20 B.R. 468, 469 (N.D.Fla.1982) (preference recovery intended to aid those who did not receive payment within the preference period, not the preferred creditor). 57 U.Chi.L.Rev. at 612, n. 37.

**12.** Defendant argues that, "there would be no need to distinguish between insiders and non-insiders for purposes of determining avoidability if recovery from insiders and non-insiders alike would occur anyway." *In re Midwestern Companies, Inc.,* 102 B.R. 169, 173 (Bank. W.D.Mo.1989).

transfers to non-insider and insider creditors. *Deprizio* does not violate this statutory scheme. Rather, it supports this scheme by holding that the reach-back period for transfers involving an insider guarantor is one year.

Similarly, I find that *Deprizio*'s interpretation of § 550(a) allowing recovery from a non-insider creditor as an initial transferee during the insider period is consistent with the avoidance powers set forth in § 547.[13] *Deprizio*'s holding does not expand a trustee's recovery power under § 550 relative to the avoided transfer under § 547. Defendant's argument that the difference between non-insider and insider as set forth in § 547(b)(4) should be carried over to § 550(a) would effectively bootstrap a distinction into § 550(a) that Congress has not made. The analysis in the *Performance* decision that *Deprizio* reads § 550 and § 547 in isolation misses the mark. The issue is whether the § 547(b)(4)(B) preference period attaches to the transfer or the transferees. Since § 547 deals solely with the transfer, *Deprizio* does not abrogate the distinction between non-insider and insider creditors in § 547(b)(4). The *Performance* court's holding that § 547(b)(4) distinguishes between non-insider and insider transferees for avoidance purposes is not supported by a plain reading of the statute, nor by the legislative history.

Finally, defendant argues that *Deprizio*'s equating "insider" with the "creditor" named in § 547(b)(1) means all references to "creditor" throughout § 547 must refer to the insider rather than the non-insider creditor and as a result, only the insider-guarantor's defenses could be raised.[14]

The *Performance* court also concluded that *Deprizio* made the § 547(c) affirmative defenses unavailable to a non-insider creditor:

[i]f recovery may be had from the initial transferee where said transfer was a preference, without regard for whether it was a preference as to the initial transferee, it would make no difference that the transfer to the initial transferee was in the ordinary course of business or that the initial transferee gave new value. Such defenses would have no application so long as the transfer to it constitutes a preference as to the entity for whose benefit it was made.

126 B.R. at 476.

Again, defendant's argument does not withstand analysis. Defendant's assertion, based on the *Performance* decision's conclusion that *Deprizio* abrogates § 547(c) defenses, is not supported by the plain language of the statute and is contrary to the holdings of the Seventh Circuit in *Deprizio*, the Tenth Circuit in *In re Robinson Brothers*, and the Sixth Circuit in *In re H & S Transportation Co.*, 939 F.2d 355 (6th Cir. 1991). Those decisions have held that the § 547(c) defenses are available to an outside creditor. *Deprizio*, 874 F.2d at 1200;

---

13. As the Tenth Circuit in *In re Robinson* noted:

As hard as one searches, one is unable to uncover any material evidence in the Code or its legislative history that Congress intended paragraph 550(a)(1) to operate less than literally merely because of [only] one of the potential defendants designated in that paragraph supplies the factual predicate for avoiding a transfer. In fact, in the original bills approved by the Senate and the House of Representative, each version of Section 550 mandated recovery from the "initial transferee."

Pitts, *Insider Guaranties and the Law of Preferences*, 55 Am.Bankr.L.J., 343, 347 (1981) (citing S. 2266, 95th Cong.2d Sess. § 101 (1978) (proposed 11 U.S.C. § 550(a)(1) ) ).

"In the precursor to Section 550 proposed by the Commission on the Bankruptcy Laws of the United States, the primary target of the Trustee's recovery was likewise the initial transferee." REPORT OF THE COMMISSION OF THE BANKRUPTCY LAWS OF THE UNITED STATES, H.R. Doc. No. 93–137, 93rd Cong. 1st Sess., Pt. II, at 127 (1973) (§ 4–409(a) ). "In explaining this section, the Commission stated that it 'covers all initial transferees of recoverable property, *not just those preferred.*'" *Id.* at 180 n. 2 (emphasis supplied by the reporting court) *reported in In re Big Three Transp., Inc.*, 41 B.R. 16, 21 n. 1 (Bankr.W.D.Ark.1983).

892 F.2d 850; 97 B.R. at 80, n. 1.

14. Baker, *Repayments of Loans Guaranteed by Insiders as Avoidable Preferences in Bankruptcy: Deprizio and Its Aftermath,* 23 U.C.C.L.J. 115, 130 (1990).

*Robinson Brothers,* 97 B.R. at 82; *H & S Transportation Co.,* 939 F.2d at 360.

■ Section 547, read in its entirety, is clear that any party to an avoided transaction under § 547(b) may use the § 547(c) defenses. First, § 547(g) clearly states that, "the creditor *or party in interest against whom recovery or avoidance is sought* has the burden of proving the nonavoidability of a transfer under subsection (c) of this section." (Emphasis added.) Section 547(c)(1) and (c)(4) are available to "the creditor to [the non-insider creditor] or for whose benefit [the insider guarantor] such transfer was made." Section 547(c)(2)[15] and (c)(5) refer to any "transferee." Section 547(c)(3) is available to a "secured party." There is simply nothing in the text of § 547 that prevents a non-insider creditor from asserting § 547(c) defenses to the transfer.

In conclusion, the plain language of § 547(b) provides that the one year preference period applies to a transfer made to a non-insider creditor when an insider guarantor of the loan is a creditor of the debtor. Section 547 allows the non-insider creditor to assert § 547(c) defenses to the transfer which the trustee seeks to avoid. If the transfer is avoidable under § 547, then the plain language of § 550(a) allows the trustee to recover the transfer from the initial transferee (non-insider creditor).

Since *Deprizio* promotes the policy of equal distribution among creditors while fostering the goal of maximizing the recovery of assets for the estate, its holding does not produce a result that is demonstrably at odds with the intent of Congress. Forcing creditors to pursue their bargained for alternative remedies does not prejudice the outside creditor if the guarantee from the insider was adequately collateralized. Failure of a creditor to adequately collateralize a guarantee suggests that the real purpose of the guarantee may be to exert additional control over the insider guaran-

tor. In such a situation, a creditor's " 'prudence' in obtaining the guarantee will often be a thinly cloaked pursuit of a preference, and giving absolute protection to ... [the creditor] merely encourages self-interested conduct by [the] [i]nsider." Nussbaum, 57 U.Chi.L.Rev. at 614.

■ I understand that an insider's removal of assets from the debtor to the detriment of debtor's creditors is theoretically more appropriately addressed by fraudulent conveyance law, but the fact that Congress may not have foreseen all of the consequences of a statutory enactment is not a sufficient reason for refusing to give effect to its plain meaning. *See, e.g., Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991).

Defendant's motion to dismiss and/or strike is denied.

Separate findings of fact and conclusions of law with respect to this ruling are unnecessary. This memorandum opinion shall constitute my findings of fact and conclusions of law.

---

**15.** In light of the Supreme Court's recent decision in *Union Bank v. Herbert Wolas, Chapter 7 Trustee of the Estate of ZZZZ Best,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (implicitly overruling the Ninth Circuit's previous ruling in *In*

*re CHG,* 897 F.2d 1479 (9th Cir.1990) ) defendant's hardship argument that the Ninth Circuit limits the availability of § 547(c)(2) as a defense is moot.