**In re V.N. DEPRIZIO CONSTRUCTION COMPANY, Debtor.**

**Louis W. LEVIT, Trustee,**

**v.**

**INGERSOLL RAND FINANCIAL CORPORATION, CIT Corporation, Construction Workers' Pension Trust Fund for Lake County & Vicinity, State of Indiana District Council, Construction and General Laborers' Fringe Benefit Funds, Railroad Maintenance Industrial Health and Welfare Funds, United States Internal Revenue Service, All Motive Equipment Company, Central States Pension Fund, and Central States Health and Welfare Fund, Defendants–Appellees.**

**Nos. 87C7435, 83B4804 and 85A927.**

United States District Court,
N.D. Illinois, E.D.

April 27, 1988.

Louis Levit, Wendy Ponader, Levit & Mason, Chicago, Ill., for trustee.

Sarah Read, Melville Washburn Sidley & Austin, Chicago, Ill., for Ingersoll Rand Financial Corp.

M. Leslie Kite, Robin Kite, M. Leslie Kite & Associates, Chicago, Ill., for CIT Group Equipment Financing, Inc.

Gerard Brost, Dept. of Justice, Washington, D.C., for I.R.S.

Francis Carey, Chicago, Ill., for Central States Pension Fund and Central States Health & Welfare Fund.

Gregory Catrambone, Maywood, Ill., for All Motive Equipment Co.

John Etzkorn, Arnold & Kadjan, Chicago, Ill., for Railroad Maintenance Indus. Health & Welfare Funds and Const. and General Laborer's Fringe Benefit Fund.

Lee Burkey, Asher, Pavalon, Gittler & Greenfield, Chicago, Ill., for Construction Workers' Pension Trust Fund for Lake County and Vicinity.

### MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

In this case, we are asked to determine whether certain payments made by the debtor, V.N. Deprizio Construction Company ("Deprizio" or "Debtor") to some of its creditors in the year before it filed for bankruptcy are voidable preferences under the Bankruptcy Code, and if so from whom those preferences may be recovered. Because both determinations rest in large part on language of two sections of the Bankruptcy Code, we begin by setting forth the relevant portions of sections 547 and 550 of the Bankruptcy Code, 11 U.S.C. §§ 547, 550.

### I.

The Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code"), makes voidable at the option of the trustee in bankruptcy any transfer[1] satisfying the requirements set forth in section 547(b):

---

1. The Code defines "transfer" as "every mode, direct or indirect, absolute or conditional, vol-

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor [2] ;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b) (1983).[3]

Once a transfer is found to be preferential, section 550 of the Code governs from whom the trustee may recover. Section 550 provides in relevant part as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section.

11 U.S.C. § 550 (1983).

## II.

Deprizio was in the construction business. Apparently, over the course of several years before its bankruptcy, Deprizio borrowed money from various lenders, including Ingersoll Rand Financial Corporation ("IRFC"), CIT Corporation (now

untary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity for redemption." 11 U.S.C. § 101(50) (1984).

**2.** The Code defines "creditor," in relevant part, as an "entity that has a claim against the debtor that arose at the time of or before the order of relief concerning the debtor." 11 U.S.C. § 101(9)(A). A "claim" means a "right to payment, whether or not such a right is ... contingent." 11 U.S.C. § 101(4)(A). If the debtor fails to meet its obligations, the creditor may recover from the guarantor. Then the guarantor may seek recovery from the debtor. Therefore, a guarantor has a contingent claim against the debtor and is a "creditor" of the debtor. Virtually every court addressing the issue has so held. *See In the matter of R.A. Beck Builder,*

*Inc.,* 34 B.R. 888, 892 (Bankr. W.D.Pa.1983); *In re Big Three Transportation, Inc.,* 41 B.R. 16, 19 (Bankr. W.D.Ark.1983); *In re Foland & Co., Inc.,* 55 B.R. 593, 594 n. 3 (Bankr. E.D. Pa.1985); *In re Aerco Metals, Inc.,* 60 B.R. 77, 79 (Bankr.N.D. Tex.1985). *Cf. Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 894 (7th Cir.1988) (dictum assuming guarantors are "creditors").

**3.** In 1984, Congress amended the voidable preference section to eliminate the requirement set forth in subsection (b)(4)(B)(ii) that an insider have "reasonable cause to believe the debtor was insolvent at the time of the transfer." Pub. L. 98–353, § 462(b)(2). That amendment only applies to cases filed ninety days after July 10, 1984. *Id.,* § 552. The present case was filed in 1983, before the effective date of the amendment.

known as The CIT Group/Equipment Financing Inc.) ("CIT"), and All Motive Equipment Company ("AMEC"). Although the record is devoid of detail on this point, the parties' discussion assumes that one or more of Deprizio's insiders [4] personally guaranteed some of Deprizio's debts to its creditors. Deprizio was also a signatory to various collective bargaining agreements which required it to contribute to the several employee pension, health and welfare, and fringe benefit funds named in the caption (the "Funds"). At some point prior to 1983, Deprizio could not meet its current obligations to the Funds. Deprizio and the Funds reached an agreement whereby the Funds allowed Deprizio to structure its payments in return for security interests on Deprizio's construction equipment, vehicles, inventory, and accounts receivable. Since IRFC, AMEC, and CIT already had security interests in some of the company's construction equipment and vehicles, the Funds' security interests were in some instances junior liens. Richard Deprizio, one of Deprizio's owners, personally guaranteed the company's indebtedness to the Funds.

Deprizio continued to operate its business and to make such payments to its creditors as it was able. In the year immediately prior to its bankruptcy, Deprizio paid $54,000 (all figures are rounded to the nearest thousand) to CIT, $6,000 to AMEC, $108,000 to IRFC, and unknown amounts to the United States Internal Revenue Service ("IRS") and to the Funds. Deprizio's financial situation deteriorated further, and on April 13, 1983, Deprizio filed for protection under Chapter 11 of the Code. Louis W. Levit was duly appointed Trustee of the debtor's estate. The case was later converted to a dissolution proceeding under Chapter 7.

On August 22, 1985, the Trustee filed an adversary proceeding in the bankruptcy court for the Northern District of Illinois seeking to avoid certain transfers. In the adversarial complaint, the Trustee alleged that the payments to CIT, AMEC, IRFC, IRS, and the Funds made by Deprizio from one year to ninety days prior to the filing of the bankruptcy petition were avoidable transfers under Code section 547. The complaint alleged that each of these payments was for the benefit of one or more of the Debtor's insiders because those insiders were contingently liable on each of the debtors' obligations, by contract or operation of law, and because each payment had the effect of reducing the insiders' potential liability. The complaint further alleged that at the time of each transfer, the debtor was insolvent and that each of the insiders who benefitted by the transfers had reasonable cause to believe the Debtor was insolvent. The adversarial complaint also alleged that each transfer was on account of an antecedent debt; was made within one year and ninety days of the filing of the petition; and enabled the creditor receiving the transfer and/or the insiders benefitting from the transfer, to receive more than such creditor or insiders would have received if the transfer had not been made and the creditors received payment only to the extent provided in Chapter 7 of the Code.

Each of the defendants named in the adversarial complaint answered and denied that the Trustee was entitled to relief and some of the defendants asserted affirmative defenses. For instance, IRFC alleged that it had received court permission to seize and dispose of the Debtor's equipment in which IRFC held a security interest. IRFC did so, and turned over to the Trustee the surplus resulting from the sale of secured assets. That turnover was purportedly in complete satisfaction of IRFC's obligations to the Debtor, its estate, the trustee, or any junior lienholder with respect to the equipment. Also, the IRS asserted sovereign immunity as a defense

---

**4.** The Code defines an "insider" of a corporate debtor as a director, officer, or general partner of the debtor, a person in control of the debtor, a partnership in which the debtor is a general partner, or a relative of a general partner, director, officer, or person in control of the debt-or. 11 U.S.C. § 101(30)(B) (1984). Richard N. Deprizio, Robert L. Deprizio, and Edward Deprizio, individually and as trustee of the Estate of V.N. Deprizio, allegedly were insiders of the Debtor.

and the Funds claimed that provisions of the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") prohibited the Trustee from recovering any voidable preferences from the Funds.

Judge Eisen, the bankruptcy judge to whom the case was assigned, decided to tackle the insider-guarantee issue before ruling on either the adequacy of the remainder of the complaint or the legitimacy of the creditors' defenses. The Trustee sought entry of an order declaring that the extended preference period described in section 547(b)(4)(B) applied, and that if all the other elements of section 547 were met, the amount of the avoidable transfers could be recovered from the non-insider transferees. The Trustee's theory was straightforward. The insiders had agreed to guarantee Debtor's obligations to the commercial creditors (IRFC, CIT, and AMEC), and the insiders were liable to the Funds and the IRS for Debtor's delinquent contributions and tax payments by operation of law. Thus, Debtor's insiders were contingently liable on each of the obligations on which Debtor made payments during the expanded preference period. The Trustee claimed that each payment was a transfer for the benefit of an insider and the expanded preference period applied. Because any preferential transfer is recoverable from either the initial transferee or the entity for whose benefit the payment was made, the Trustee sought recovery from the creditors.

After considering the parties' briefs, Judge Eisen ruled against the Trustee and for the creditors. *In re V.N. Deprizio Construction Company,* 58 B.R. 478 (Bankr. N.D. Ill.1986). Judge Eisen determined that each payment the Debtor made to its creditors which had the indirect effect of benefitting insiders constituted not one but two distinct transfers—one directly to the creditor receiving the payment and one indirectly to the insiders. Therefore, while the "transfers" to the insiders were potentially avoidable during the expanded preference period, the transfers to the non-insider creditors were subject only to the ordinary ninety-day preference period. Judge Eisen went on to say that even if the

court were to hold the transfers to the non-insider creditors to be avoidable, he would not allow the Trustee to recover from the non-insiders because it would be "inequitable" to penalize those creditors who prudently obtained a guarantee by subjecting them to an expanded preference period.

Following Judge Eisen's decision on the Trustee's motion for declaratory judgment, each of the creditors filed a motion to dismiss the adversary proceeding for failure to state a claim upon which relief can be granted. Judge Eisen granted these motions and dismissed the Trustee's complaint. The Trustee then appealed to this court.

### III.

The Code bifurcates the treatment of avoidance and recovery issues concerning preferential transfers. Section 547 governs avoidability while section 550 governs recoverability.

We believe that the plain language of section 547 requires us to hold that the payments Deprizio made to the non-insider creditors during the expanded preference period can be avoidable preferences. The Code's broad definition of "creditor" includes guarantors. *See* n. 2, *supra.* Hence, each of the payments Deprizio made was not only *to* a creditor (the recipient of the money) but was also *for the benefit of* a creditor (the guarantor). Section 547(b)(4)(B) expands the preference period when "such creditor" on the date of the transfer was an insider and had reasonable cause to believe the debtor was insolvent. The phrase "such creditor" refers back to subsection (b)(1)—the creditor to whom or for whose benefit the transfer occurred. Thus, when a debtor makes a payment on a debt which has been guaranteed by an insider, the payment was made for the benefit of an insider and the expanded preference period applies.

Several courts, including Judge Eisen, have avoided this result by focusing on the meaning of the term "transfer." *In re V.N. Deprizio,* 58 B.R. at 480; *In re Mer-*

*con Industries, Inc.,* 37 B.R. 549 (Bankr. E.D. Pa.1984). In *In re Mercon,* the court held that a single payment on a guaranteed debt constituted *two* transfers under the Code.

One transfer was from the debtor to Goldman [the lender] in satisfaction of the primary indebtedness. The other was the transfer to the guarantors in satisfaction of their contingent liability. Although the second transfer is not evinced by the passage of anything other than the transfer of funds to Goldman, the effect of the transfer is manifest in the satisfaction of the guarantors contingent liability.

37 B.R. at 552.

*Mercon* then applied the voidable preference analysis separately to each transfer. The transfer to the lender was simply a transfer to a non-insider, and the ordinary ninety-day preference period applied. The transfer to the insider-guarantor, on the other hand, was for the benefit of an insider, and the expanded preference period applied. *Mercon,* 37 B.R. at 552.

We believe *Mercon* and Judge Eisen misperceived the nature of a "transfer" under the Code. Section 550 expressly recognizes that one transfer may benefit both an outsider creditor and an insider guarantor and permits recovery from either the "initial transferee" or "the entity for whose benefit the transfer was made." Given that clear dichotomy in section 550, it is anomalous to suggest that one payment constitutes two transfers under section 547. Further, we believe *Mercon* mistakenly viewed transfers from a creditor's point of view. Under the analysis in *Mercon,* any creditor who receives a benefit from a debtor's payment receives a "transfer." This position may be reasonable in the abstract, but the Code defines "transfer" from a payer's point of view. The Code says that a transfer occurs when someone "dispos[es] of or part[s] with property or an interest in property." This definition clearly looks from the payer's vantage point. Only a payer "dispos[es] of or part[s] with property." A payee receives or acquires property. If Congress had wanted a trans-

fer to occur whenever someone receives a benefit, it could have defined "transfer" as "receiving or acquiring property or an interest in property." If Congress had used such language, we would agree with *Mercon* that every entity receiving a benefit receives a "transfer." But Congress did not; thus, we must conclude that a transfer is an act disposing of or parting with property. Here, each payment Deprizio made to one of its creditors was a single disposition of property and hence a single "transfer." Each payment was made to an outside creditor and simultaneously benefitted an insider creditor. Yet each such payment remained but a single transfer. Therefore, we conclude that the payments the Debtor made to its outside creditors on obligations guaranteed by insiders are subject to the expanded preference period.

## IV.

■ Section 550(a) provides that "to the extent a transfer is avoided ... the trustee may recover, for the benefit of the estate, the property transferred, ... from—(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made." This clear language, however, has convinced only one court that when a debtor pays a non-insider creditor which had obtained a guarantee from an insider, the Trustee may recover from either. *In re Big Three Transportation,* 41 B.R. 16 (Bankr. W.D. Ark.1983). Most courts have concluded that recovery may be had only from the insider. *In re V.N. Deprizio,* 58 B.R. at 480–81; *In re Aerco Metals, Inc.,* 60 B.R. 77 (Bankr. N.D.Tex.1985); *In re Mercon, supra; In re R.A. Beck Builder, Inc.,* 34 B.R. 888 (Bankr. W.D.Pa.1983); *In re Duccilli Formal Wear, Inc.,* 8 B.C.D. 1180 (Bankr. S.D.Ohio 1982); *In re Cove Patio Corp.,* 19 B.R. 843 (Bankr. S.D.Fla. 1982); *In re Church Buildings and Interiors, Inc.,* 14 B.R. 128 (Bankr. W.D.Okla. 1981).

The court in *Big Three* acknowledged prior authority but refused to overlook the unambiguous language of section 550(a).

That language is susceptible of no other interpretation than the result reached

herein. The drafters of the Code could very easily have omitted the "initial transferee" language. Since they obviously did not, however, drafters of loan guaranty agreements will have to consider the literal meaning of § 550(a)(1) in advising their lending institution clients.

41 B.R. at 21.

The majority view, however, is to the contrary. Those cases typically acknowledge the language in section 550(a), but invoke equitable powers to refuse to allow the trustee to recover from "innocent" non-insider creditors. Those courts usually refer to the analysis of section 550 provided in *Collier on Bankruptcy*, § 550.02 at 550–7 (15th ed.1983):

> In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should exercise its discretion to use its equitable powers under section 105(a) and 28 U.S.C. § 1481 to prevent an inequitable result ...
>
> Likewise, if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to preferentially benefit an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise a creditor who does not demand a guarantor can be better off than one who does.

*See, e.g., R.A. Beck,* 34 B.R. at 893.

Although it is the minority view, we think *Big Three* states the correct view. Where Congress has crafted an unambiguous comprehensive statutory scheme, such as it has in the Code, we are extremely hesitant to tamper with that scheme by use of vague equitable powers. Section 550(a), read literally, authorizes recovery of voidable transfers from all initial transferees. Congress has made this decision and it is not the role of the courts to subvert Congress' bankruptcy policy. As Judge Easterbrook of the Seventh Circuit Court of Appeals recently said, "[w]e have serious doubts ... about the propriety of judges' declining to enforce statutes that produce inequitable results. Bankruptcy statutes are not special cases." *Bonded Financial Services, Inc. v. European American Bank,* 838 F.2d 890, 894 (7th Cir.1988). More importantly, however, we question whether recovery from the non-insider is inequitable.

When Congress enacted the Code in 1978, it dramatically altered the law of preferences. Under the Bankruptcy Act of 1898, the preference period for all types of creditors was four months. Bankruptcy Act § 60a(1), 11 U.S.C. § 96(a)(1) (1977). The Code, by contrast, differentiates between creditors—transfers to or for the benefit of non-insider creditors are subject to a ninety-day preference period, while transfers to or for the benefit of insider creditors are subject to a one-year preference period. 11 U.S.C. § 547(b)(4).

The sound rationale behind the extended preference period for insiders rests on the insiders' greater knowledge of the debtor's financial situation and their greater control over the debtor's purse strings. An insider usually knows sooner than an outside creditor whether the debtor is likely to sink or swim. When bankruptcy becomes likely or even possible, insiders have enormous incentive to compel the debtor to prefer insiders to outsiders. Obviously, the insider would prefer to receive one hundred cents on the dollar outside of bankruptcy rather than take his chances in the bankruptcy proceeding. The voidable preference rules are designed to prevent such "last-minute" grabs and to force all creditors (in- or outsiders) to participate equally.

The same incentives are at work when the insider is not paid directly by the debtor but benefits from the payment to an outside creditor. When an insider is contingently liable on a guarantee, he has every incentive to make the debtor pay off the debts on which the insider is secondarily liable before the debtor pays its other debts. The insider guarantor would prefer to have the debtor satisfy its obligations out of corporate funds rather than have creditors pursue him for payment. Even if the creditor who receives the funds is not

an insider, the payment to it may be preferential because the payment was made in order to reduce the insider's potential liability on his guarantee.

What this often means is that a non-insider creditor gets paid only because of the existence of the guarantee. Had the creditor not obtained an insider's guarantee, or the law not imposed personal liability on an insider, the creditor may have received no payments during the expanded preference period at all. When a company is insolvent, it is unlikely it will make all its payments to an ordinary creditor (i.e., one without an insider's guarantee). When an insolvent company pays a guaranteed debt over its other debts, it is reasonable to presume the motive is to benefit the guarantor. We see nothing inequitable in forcing a creditor to return payments it received only because a debtor had engaged in preferential behavior.

Contrary to the creditors' arguments, this interpretation of the Code neither renders guarantees useless nor imposes any substantial burden upon creditors who have obtained them. A guarantee serves two purposes. It increases the likelihood that the debtor will meet its payment obligations, and also provides a second pocket from which to recover in the event of default. A solvent debtor may continue to prefer a guaranteed creditor over its other creditors without fear of running afoul of the voidable preference rules. Once a debtor becomes insolvent, however, a guaranteed creditor has no right to preferential payments. At this point, the second purpose of a guarantee—to provide a second pocket—becomes paramount. The creditor no longer can look to the debtor for payment, but the creditor fully retains the ability and the right to recover from the guarantor. The creditor bargained for a second source of funds and that bargain remains unaffected by the debtor's bankruptcy. We see nothing inequitable in requiring the creditor to pursue the guarantor once the debtor becomes insolvent—indeed that is precisely what the creditor bargained for in obtaining the guarantee.

A difficulty arises when the guarantor, as well as the debtor, is insolvent. One can argue that a creditor should not have to return the preferential transfer when the guarantor is insolvent, because the creditor lacks a second pocket from which it may seek recovery. We reject any voidable preference rule conditioned on the solvency of the guarantor. A creditor agrees to bear the risk of guarantor insolvency when it makes a loan and takes a guarantee. A prudent creditor will extensively investigate the guarantor's financial situation and will continue to monitor the guarantor's finances to make sure he or she can pay in the event of debtor's default. A creditor can adjust the rate of interest it charges to its debtor to reflect the risk of default by both the debtor and guarantor. Moreover, in those situations where the guarantor has previously obtained a discharge in a personal bankruptcy proceeding, the Code may not require the creditor to return payments received from the debtor during the expanded preference period. The reason is not that it would be inequitable to do so, but rather that the insider-guarantor derived no benefit from the payment to the creditor. (By definition, a guarantor whose obligation on a guarantee is discharged no longer is potentially liable to the creditor. As a result, the discharged guarantor does not benefit from the debtor's payments.) Whether in any given situation an insider-guarantor does or does not benefit from a debtor's payment to a creditor is a question of fact. Thus, we conclude that all payments from one year to ninety days before the filing of the petition in bankruptcy made to creditors who, by operation of their guarantee or by operation of law, had a legally enforceable right to recover from the Debtor's insiders are subject to the preference rules of the Bankruptcy Code and are recoverable from the non-insider recipients of the payments.

## V.

We must now address arguments raised specifically concerning the Funds and the IRS. The Funds are employee pension and welfare benefit plans within the meaning of ERISA, 29 U.S.C. § 1002(1),

(2). Section 403(c)(1) of ERISA, 29 U.S.C. § 1103(c)(1), provides that, with certain inapplicable exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." The Funds argue that this provision prohibits the recovery of any preferential payments made to the funds because such recovery would "inure to the benefit of" Deprizio.

We reject the Funds' argument for the same reasons expressed by Judge Shadur in *In re Ottawa Cartage, Inc.,* 55 B.R. 371 (N.D. Ill.1985). Deprizio's case is a Chapter 7 dissolution proceeding. Deprizio is no longer in business, and the Trustee stands as surrogate for Deprizio's creditors, not for Deprizio. "Any recovery of the preferential transfer will simply enlarge the pool of assets available to satisfy administrative expenses and, once they are fully paid, to provide a fractional dividend to [debtor's] creditors." *Id.,* 55 B.R. at 377. Recovery of monies paid to the Funds will not "inure to the benefit of" Deprizio—it will benefit Deprizio's creditors. *Id.; Deiches v. Carpenters' Health and Welfare Fund of Philadelphia,* 572 F.Supp. 766, 773 (D.N.J. 1983). *See also In re Pulaski Highway Express, Inc.,* 41 B.R. 305, 308–12 (Bankr. M.D.Tenn.1984).

■ The Funds also argue that the insider, Richard Deprizio, did not benefit from Deprizio's transfers to the Funds, and therefore the expanded preference period should not apply. There are two theories on which the Funds could obtain recovery against Richard Deprizio for unpaid contributions. First, the Funds could seek to recover from Richard Deprizio on his personal guaranty.[5] Second, the Funds could seek to recover under the provisions of ERISA. Under either theory, we believe

that Richard Deprizio did benefit from the Debtor's payment of contributions to the Funds.

The Funds were entitled to payment of contributions in an amount determined by the terms of various collective bargaining agreements. Assuming that Richard Deprizio could be held personally liable to the Funds for the Debtor's unpaid contributions both under the terms of ERISA (*see Bambino v. Index Sales Corp.,* 673 F.Supp. 1450 (N.D.Ill.1987)) and under the promissory notes he executed, the Funds could recover from *either* Richard Deprizio or the Debtor. In no circumstance would the Funds be entitled to a double recovery. Hence each payment by the Debtor had the effect of reducing Richard Deprizio's potential liability to the Funds. A reduction in potential liability was, of course, a benefit to Richard Deprizio.

Although we conclude that Judge Eisen incorrectly immunized the ERISA Funds from liability under sections 547(b)(4) and 550(a) of the Code, we do not mean to imply that pension funds will have to routinely disgorge one year's worth of contributions whenever an employer goes bankrupt. The Trustee must establish each of the elements of avoidable preferences including that the transfer was made on account of an antecedent debt. § 547(b)(2). Funds may still invoke any applicable exception in section 547(c), limiting the Trustee's avoidance powers. For instance, the Funds may still use the powerful "ordinary course of business" exception in section 547(c)(2). As long as a debtor makes its contributions in the ordinary course, the contributions should not be found avoidable.

Even if Funds do have to return some contributions as voidable preferences, the hardship to the Funds usually will be minimal. When the time comes for distribution of the estate's assets, ERISA Funds are given a high priority. Section 507 of the

---

**5.** In their brief filed in the bankruptcy court, the Funds stated that Deprizio's indebtedness to the Funds "was personally guaranteed by Richard Deprizio." (Funds' Brief filed November 18, 1985 at 3.) Now the Funds contend that Richard Deprizio was a "co-maker" of the notes evidencing Deprizio's debt to the Funds, and not

a guarantor. However, none of the relevant documents is included in the record, so we can neither determine Richard Deprizio's true status, nor determine whether Richard Deprizio would have a right of contribution or subrogation against Deprizio even if he was a co-maker.

Code gives a fourth priority to unsecured claims for contributions to employee benefit plans (but only for contributions arising from services rendered within 180 days before the date of the filing of the petition and limited to $2,000 per employee per plan). 11 U.S.C. § 507(a)(4). Only administrative expenses, certain post-petition expenses in involuntary cases, and employee wage and benefit claims have higher priority. Moreover, once an employer ceases to make contributions in the ordinary course of business, a pension plan may obtain, just as the Funds in this case did, security interests in the employer's property. That way, in the event of bankruptcy, the pension plan may seize and sell the collateral and get paid without participating in the collective proceeding. (Of course, the Funds must comply with the automatic stay provisions in 11 U.S.C. § 362.)

Many of these same conclusions apply with equal force to the arguments raised by the IRS. The Internal Revenue Code (26 U.S.C.) imposes personal liability on a corporate officer for failing to pay to the government tax monies withheld from employees. 26 U.S.C. § 7501; *Monday v. United States,* 421 F.2d 1210 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970). Although the IRS argues that the corporate insider is independently liable for payment of withheld taxes rather than secondarily liable as a guarantor, there is no doubt that the corporate insider in fact reaps a benefit from every payment to the IRS by the debtor. Each payment reduces the debtor's total tax liability and the insider's potential liability to the IRS.

A more substantial challenge is the IRS' claim that a debtor's payment of withheld taxes is not a transfer "of property of the debtor" as that phrase is used in section 547(b). The tax code impresses a trust on all tax monies employers withhold from employees. 26 U.S.C. § 7501(a). Several courts have held that payment of withheld taxes from these trust funds do not consti-

tute avoidable preferences because the transfer was of funds held in trust, not property of the debtor. *See, e.g., In re Rodriguez,* 50 B.R. 576 (Bankr. E.D.N.Y. 1985); *In re Razorback Ready–Mix Concrete Co.,* 45 B.R. 917 (Bankr. E.D.Ark. 1984).

There is no doubt that monies held in trust do not constitute "property of the estate." 11 U.S.C. § 541(b); *see Drabkin v. District of Columbia,* 824 F.2d 1102, 1114 (D.C. Cir.1987). The difficult question is, when can a court conclude that funds paid in satisfaction of tax liabilities are held in trust? The most recent, and we believe correct discussion of this issue, is in *Drabkin, id. Drabkin* holds that tax payments made within forty-five days [6] after the last day such tax is payable without penalty are never subject to recovery by the Trustee in bankruptcy. 824 F.2d at 1115. (In other words, once the grace period after the tax has come due has expired, the debtor has forty-five days to pay the tax, else those payments become subject to recovery in bankruptcy.) However, tax payments made after the forty-five day period qualify as potential voidable preferences unless the funds used to pay the tax obligation are traceable to a trust and are therefore excluded from the debtor's estate under section 541. *Id. Drabkin* instructs courts to require traceability, but also to use "reasonable assumptions" in doing such tracing. *Id.* If withheld tax monies are commingled in a bank account with other funds, it is a "reasonable assumption" that the withheld monies retain their trust characteristics so long as the bank account balance never drops below the amount of taxes withheld. However, the *Drabkin* court found it unreasonable to assume that funds paid to the taxing authority were held in trust where the money withheld was deposited in one account and the money paid to the taxing authority was drawn from a different account. 824 F.2d at 1116–17. In the more difficult case, where

---

**6.** In 1984, Congress amended the "ordinary course of business" exception in section 547(c)(2) to eliminate the forty-five day provision. Pub.L. 98–353, § 462(c). The former sec-

tion 547(c)(2) governs the present case since this case was filed prior to the effective date of the 1984 amendments, just as in *Drabkin. See* n. 2, *supra.*

withheld taxes are deposited in a bank account, that account is then dissipated to nearly nothing, after-acquired funds are deposited into the account, and *then* money is drawn to pay tax liability, it probably would be unreasonable to assume that money is held in trust. All the tax money held in trust would have been spent on other expenses; the money eventually paid over to the government would come from general revenue sources, not trust funds. In that situation, it probably would be unreasonable to deem the tax money "trust funds."

What transpires in any given case is of course a question of fact. The bankruptcy court must determine in the first instance whether money paid to the IRS came from trust funds or from a company's general revenue sources.

## VI.

The scope of our decision in this case is necessarily narrow. We have not determined whether any of the payments Deprizio made from April 13, 1982 to January 13, 1983, are indeed avoidable. There are five elements to an avoidable transfer, only two of which we have discussed. We must remand this case to the bankruptcy court for further proceedings. On remand, the bankruptcy court shall enter an order in the Trustee's favor declaring that the expanded preference period in section 547(b)(4)(B) applies. The bankruptcy court must then go on to determine whether the other elements of an avoidable transfer are met. The court must address whether an insider was in fact benefitted by each transfer. In so doing, the court probably will have to determine the accuracy of CIT's and AMEC's contentions that no insider guaranteed Deprizio's debts to them. The court should also determine whether the personal bankruptcies of some or all of the Debtor's insiders prevented them from benefitting from Debtor's transfers. The bankruptcy court must determine whether each transfer was on account of an antecedent debt; whether the debtor was insolvent at any or all times during the expanded preference period; and whether the transfers did in fact enable the insiders to

receive more than they would have if the transfer had not been made and the insiders received payment under the provisions of the Code. The bankruptcy court may need to address IRFC's accord and satisfaction defense and the IRS' trust fund arguments. The court may need to consider CIT and AMEC's laches and estoppel defenses. The bankruptcy court should also consider the Funds' argument, raised for the first time on appeal, that the Davis–Bacon Act, 40 U.S.C. § 276a *et seq.*, prohibits the bankruptcy Trustee from recovering any money from the Funds paid on behalf of employees working on the federally funded O'Hare Rapid Transit Extension Project. The bankruptcy court is, of course, free to consider any and all other issues necessary to the resolution of this matter.

Accordingly, the decision of the bankruptcy court is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.