## In re COASTAL PETROLEUM CORPORATION, Debtor.

## COASTAL PETROLEUM CORPORATION, Plaintiff,

v.

## UNION BANK & TRUST COMPANY, et al., Defendants.

Bankruptcy No. B85–00594.

Adv. No. B87–0114.

United States Bankruptcy Court, N.D. Ohio, E.D.

Sept. 23, 1988.

Richard A. Baumgart and Michael D. Zaverton, Dettelbach & Sicherman Co., L.P.A., Richard G. Hardy, Ulmer & Berne, Cleveland, Ohio, for debtor.

Stephen D. Hobt, Strachan, Green, Miller, Olender & Hobt, Cleveland, Ohio, John C. Heath, Celina, Tenn., for defendants.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This adversary proceeding concerns alleged insider preferences and is before the Court upon the parties' respective cross-motions for partial summary judgment. After reviewing the supporting briefs, stipulations and other relevant portions of the record, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

I.

The pertinent facts are generally not in dispute. Count Five of the Complaint seeks a recovery of certain prepetition transfers allegedly made by the Plaintiff, Coastal Petroleum Corporation, Inc. (Debtor) to the Defendant, Union Bank & Trust Company of Livingston, Tennessee (Bank) within one year of the filing of the Debtor's case under Chapter 11. The Debtor labels the transfers as being either preferences or, alternatively, as fraudulent conveyances. The transfers in question concern certain loan transactions. The first loan transaction involved a loan in the amount of $484,000.00 made by the Bank to Donald Coleman (Coleman), one of the Debtor's principals, on July 21, 1983. The Bank, on the same date, also made a loan to the Debtor in an amount of $300,000.00 (First Coastal Loan). Subsequently, on June 29, 1984, the Bank made another loan to the Debtor in an amount of $218,724.10 (Second Coastal Loan). As security, the First Coastal Loan was secured by an open-end mortgage, assignment and security agreement, executed and delivered by the Debtor to the Bank. The Second Coastal Loan was purportedly secured by an open-end mortgage, assignment and security agreement which was executed and delivered by the Debtor to the Bank on August 27, 1984.

As additional security, the Bank, on June 29, 1984, obtained individual guaranties on the two Coastal loans from Coleman and William Nickel (Nickel), who were, at that time, officers, directors and owners of all of the Debtor's outstanding shares of

stock.[1] Further, on August 27, 1984, the Debtor executed a guaranty on Coleman's loan obligation to the Bank.[2]

Respecting both Coastal loans, the following payments were made by the Debtor:

| Date | Manner of Payment | Amount |
|------|-------------------|--------|
| 9/22/83 | Debit from account | $10,000.00 |
| 11/4/83 | Coastal check | 20,000.00 |
| 12/8/83 | Coastal check | 10,000.00 |
| 6/29/84 | Check from Gary McClure | 50,000.00 |
| 7/12/84 | Coastal check | 17,832.34 |
| 9/25/84 | Coastal check | 40,000.00 |
| 10/11/84 | Coastal check | 10,000.00 |
| 11/13/84 | Coastal check | 10,000.00 |
| 1/31/85 | Coastal check | 6,000.00 |

## II.

The issue for the Court's determination is whether transfers to a non-insider creditor, made more than ninety days before but within one year of the filing of the bankruptcy petition on a debt guaranteed by insiders constitutes an avoidable preference recoverable from said creditor. For the reasons articulated herein, such a transfer is a voidable transfer recoverable from the non-insider creditor.

Section 547(b) of the Bankruptcy Code, [11 U.S.C. 547(b)], provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [11 U.S.C.S. §§ 701 et seq.];

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C.S. §§ 101 et seq.]. 11 U.S.C. 547(b).

For the limited purpose of the Court's ruling on the parties' cross-motions for summary judgment, the parties herein have stipulated that the subject transfers were for the benefit of a creditor of the Debtor on account of an antecedent debt owed by the Debtor before the transfers were made. The parties have further stipulated that the Debtor was insolvent at the time of the transfers, and that the Bank received more than it would have received had the transfers not been made and the Debtor had been liquidated under Chapter 7 proceedings. Additionally, the parties have conceded that Coleman and Nickel were "insiders" as that term is defined by § 101(30) of the Code. Thusly, the requirements for an avoidable transfer under § 547(b) have been satisfied by stipulation of the parties.[3] With this stipulation, the Court must next determine whether the avoidable transfers are recoverable against the defendant Bank in view of provisions of § 550 of the Code.

In relevant part, § 550 provides:

11 U.S.C. § 550. Liability of transferee of avoided transfer

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title [11 USC § 544, 545, 547, 548, 549,

1. The loan application and assignment and security agreement pertaining to the First Coastal Loan dated July 21, 1983, reflects that William R. Nickel is the Debtor's president (*See*, Stipulations, Exs., B and C); however, the mortgage and security agreement securing the Second Coastal Loan dated August 27, 1984, reflects that Donald Coleman is the Debtor's president. (*See*, Stipulations, Ex. F.).

2. On June 29, 1984, Delsy Miller executed a guaranty on the Second Coastal Loan. Gary McClure, the Debtor's corporate secretary on June 29, 1984, delivered $50,000.00 to the Debtor which was applied to pay the Debtor's loan obligations to the Bank. (*See*, Stipulations.).

3. *See*, Defendant's Motion For Partial Summary Judgment; Stipulation, filed herein.

553(b), or 724(a) ], the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

(b) The trustee may not recover under section (a)(2) of this section from—

(1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or

(2) any immediate or mediate good faith transferee of such transferee.

(c) The trustee is entitled to only a single satisfaction under subsection (a) of this section. 11 U.S.C. § 550

Acknowledging a split of decisional authority among the courts, the Debtor strenuously argues that the provisions of § 550(a) allows it to recover the transfers from the non-insider bank which was the initial transferee as described by § 550(a)(1). It is undisputed that the Bank is a non-insider that acted in good faith and not in concert with the two insider guarantors. The Debtor is a closely-held corporation whose sole officers and shareholders were Coleman and Nickel. The Debtor sought voluntary relief under Chapter 11 on March 11, 1985, and at no time during the one-year period preceding the petition filing date was the Debtor solvent.

The unambiguous language of § 550 allows the Debtor to seek a recovery of the avoidable transfers either from the Bank, the initial transferee, or from the insiders for whose benefit the transfers were made. Absent the insiders, it is clear that the transfers made to the Bank outside of the ninety-day preferential period would leave the insider guarantors as the sole defendants to this avoidable preference action. As indicated above, it is uncontested that the Bank acted not in concert with the insiders, and received the transfers in good faith. This lack of collusion, however, does not afford the Bank any treatment other than that dictated by § 550(a)(1). Imposing the requirements of § 550(a)(1) does not necessarily visit an inequitable result upon a non-insider creditor. Where a creditor obtains personal guarantees as further security for loans made to an insolvent debtor, such creditor assumes any consequential risks which flow therefrom. This is particularly so where preferential transfers are received within a statutorily proscribed period. Any failure of the creditor to adequately investigate the credit worthiness of the debtor or its insider guarantors should not be viewed as a statutory deficiency but, rather, as an inherent business risk. Moreover, nothing in § 550 prohibits the creditor from seeking recovery from its guarantor. More recently, the well-reasoned analysis of the District Court in, *In re V.N. Deprizio Const. Co.*, 86 B.R. 545, 552; 14 B.C.D. 218 (N.D.Ill.1988), correctly stated the case for strict construction of the statute when it stated:

The insider guarantor would prefer to have the debtor satisfy its obligations out of corporate funds rather than have creditors pursue him for payment. Even if the creditor who receives funds is not an insider, the payment to it may be preferential because the payment was made in order to reduce the insider's potential liability on his guarantee.

What this often means is that a non-insider creditor gets paid only because of the existence of the guarantee. Had the creditor not obtained an insider's guarantee, or the law not imposed personal liability on an insider, the creditor may have received no payments during the expanded preference period at all. When a company is insolvent, it is unlikely it will make all its payments to an ordinary creditor (i.e., one without an insider's guarantee.) When an insolvent company pays a guaranteed debt over its other debts, it is reasonable to presume the motive is to benefit the guarantor. We see nothing inequitable in forcing a creditor to return payments it received only because a debtor had engaged in preferential behavior. 86 B.R. 552, 553.

38

The rationale articulated in *Deprizio II* is a correct one, if for no other reason, that it complies with the statutory language which we are obliged to impose.[4] *See also, In re Big Three Transportation, Inc.*, 41 B.R. 16, 19 (Bankr.W.D.Ark.1983).

One of the insider guarantors, William Nickel, received a discharge in bankruptcy on March 11, 1986.[5] Generally, in situations where the guarantor has previously obtained a discharge in a personal bankruptcy proceeding, the Code may not require the creditor to return payments received from the debtor during the expanded preference period. *In re Deprizio Constr. Co.*, 86 B.R. 545. In the matter at bar, however, there remains an insider guarantor (Coleman) who has not been discharged in a personal bankruptcy and, to that extent, the impact of § 550(a)(1) upon the Bank remains unaltered.

Acknowledging a split of decisions among the several courts having addressed this issue, the majority of courts posit that an allowance of a recovery by a debtor against a non-insider creditor would be unduly suggestive of an enlargement of a trustee's rights under § 547. Further, these courts hold that the non-insider creditor would be prejudiced if recovery was allowed against it when it would have no such exposure under § 547 and § 550 had it chosen not to obtain personal guaranties from the insiders. *See In re C-L Cartage Co.*, 70 B.R. 928, 933 (Bankr.E.D.Tenn. 1987); *In re Cove Patio Corp.*, 19 B.R. 843 (Bankr.S.D.Fla.1982). *See also, Collier on Bankruptcy*, § 550.02 at 550–8 (15th Ed. 1985). This Court disagrees. The language of § 550 is clear to state that recovery may be had from the initial transferee (the Bank) or from the entity for whose benefit the transfer was made (the insiders). That language is not only unambiguous but is also unconditional. To the extent avoided, the trustee may seek recovery under § 550(a)(1) against the creditor or against the insider, but is limited to a single recovery.

Courts which have chosen to ignore the letter of § 550(a)(1) have done so on equitable grounds. *See, Cartage* and *Cove Patio, supra.* The inescapable conclusion remains, however, that courts must apply the law as enacted by the Congress. The legislative history of § 550(a)(1) is silent to indicate a meaning different from the statutory language. Since the enactment of the Bankruptcy Code in 1978, Congress has twice amended the Code, in 1984 and 1986, respectively. On neither occasion did the Congress deem it necessary to alter or amend the language of § 550(a)(1). Thusly, we are constrained to an application of the literal provisions of the statute which clearly expresses congressional intent. Where, as here, the statutory language clearly expresses congressional intent, a court may not read another meaning into the statute to arrive at a more preferable result. *See, U.S. v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), ("Where the language of the statute is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive."); *Central Trust Co. v. Official Creditors' Committee*, 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982); *In re Flagstaff*, 739 F.2d 73 (2d Cir.1984).

Accordingly, the Debtor's motion for partial summary judgment is granted, and the Defendant's motion for partial summary judgment is denied.

IT IS SO ORDERED.

---

**4.** The Bankruptcy Court, in *Deprizio I, In re Deprizio Constr. Co.*, 58 B.R. 478 (Bankr.N.D.Ill. 1986), held that § 550(a)(1), on equitable grounds, did not allow a recovery against a non-insider creditor. On appeal, the District Court reversed.

**5.** *In re William Nickel*, Case No. B85–01297, (Bankr.N.D.Ohio, Krasniewski, J.).