96 B.R. 224 (1988)
In the Matter of the MIDWESTERN COMPANIES INC., Debtor.
Steven C. BLOCK, Plaintiff,
v.
TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Defendant.
Bankruptcy No. 84-01679-SW-11, Adv. No. 88-0624-SW-11.
United States Bankruptcy Court, W.D. Missouri, Southwestern Division.
December 15, 1988.
Steven C. Block, Boland, McQuain, Block, DeHardt & Rosenbloom, Kansas City, Mo., for plaintiff.
Edward Rothbert, Liddell, Sapp, Zivley, Hill & LaBoon, Houston, Tex., Paul Hoffman, Smith, Gill, Fisher & Butts, Kansas City, Mo., for defendant.
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR RECOVERY OF PREFERENCE AND FINAL JUDGMENT OF DISMISSAL
DENNIS J. STEWART, Chief Judge.
This is an action brought by the trustee in bankruptcy for the purpose of recovering from the defendant, as a preference within the meaning of § 547 of the Bankruptcy Code, some $2,032,800.00 which was transferred to it within the year next preceding bankruptcy to pay a preexisting loan but not within the 90-day period next preceding bankruptcy. The trustee does not contend that the defendant is an "insider" of the debtor so that the provisions of § 547(b)(4)(B) apply, which extend the preference period from 90 days to one year before bankruptcy with respect to an "insider" who has reasonable cause to believe the debtor to be insolvent. Rather, the trustee points out that there was a guarantor who was in fact an "insider" within the meaning of § 547(b)(4)(B), supra, and who had reasonable cause to believe the debtor to be insolvent at the time that the loan balance was paid to the defendant bank. Accordingly, the trustee argues that the payment, with respect to the "insider" guarantor was preferential within the meaning of the above cited preference statute. Then, he argues that, having established that the transfer was preferential with respect to the "insider" guarantor, he may recover the amount of the preference from the defendant bankas the "initial transferee" of the preference[1]under *225 § 550(a) of the Bankruptcy Code, which provides that:
"to the extent that a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or if the court so orders, the value of such property, from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee." (Emphasis added.)
The trustee contends that "[t]he statutory language is clear and unambiguous" and therefore leaves no room for "the equitable arguments and reasoning used by the majority view." He cites three case decisions which agree with this argument: In re V.N. Deprizio Const. Co., 86 B.R. 545, 550 (N.D.Ill.1988) ("We believe that the plain language of section 547 requires us to hold that the payments made to the non-insider creditors during the expanded preference period can be avoidable preferences."); In re Big Three Transportation, 41 B.R. 16, 20, 21 (Bkrtcy.W.D.Ark.1983) ("This . . . Court . . . refuses to overlook the unambiguous language of 11 U.S.C. § 550(a)(1). . . . That language is susceptible of no other interpretation than the result reached herein. The drafters of the Code could very easily have omitted the `initial transfer' language."); In re Costal Petroleum Corp., 91 B.R. 35, 38 (Bkrtcy.N.D.Ohio 1988) ("That language is not only unambiguous but is also unconditional.")
Even if the language is unambiguous, however, it cannot be held, consistently with the standard canons of statutory construction, to overrule the explicit prohibition in § 547 against recovery of transfers conferred on non-insiders more than 90 days before bankruptcy. One statute, if possible, should not be construed to rescind all or part of another[2] and, in statutory as well as other construction, the specific controls over the general. Accordingly, the specific provisions in § 547 against recovery from a non-insider recipient of a transfer more than 90 days before bankruptcy cannot be overruled by the general provisions of § 550(a)(1). Rather, under these standard canons of construction, the "initial transferee" provision of the latter section must be read to include only "initial transferees" who have received transfers which are prohibited preferences as to them. See, In re Cove Patio Corp., 19 B.R. 843, 845 (Bkrtcy.S.D.Fla.1982) ("Section 550(a)(1) was not intended to expand the Trustee's right to recover preferences as provided in § 547."); In re Mercon Industries, Inc., 37 B.R. 549, 552 (Bkrtcy.E. D.Pa.1984) ("Since Goldman is not liable to the Trustee for transfers made prior to the 90 day period, there is no apparent basis for liability under § 550(a).")
Further, the abhorrence of avoiding a transfer with respect to a non-insider as to whom it is not preferential is so great that, apart from principles of statutory construction, it has long been recognized that a preference action is a creature of equity and that the bankruptcy courts, in employing the doctrine, are to apply equitable principles.[3] The case decisions which have held that recovery cannot be had against a bank in circumstances such as those at bar have simply seized upon the obvious unfairness and inequity of permitting the trustee to recover under such circumstances. See In re Duccilli Formal Wear, Inc., 8 B.C.D. 1180, 1183 (Bkrtcy.S.D.Ohio 1982) ("[I]t *226 would be inequitable to require the bank to surrender up repayment of its loan where payments to it were not made within 90 days of filing,"); Matter of R.A. Beck Builder, Inc., 34 B.R. 888, 894 (Bkrtcy.W. D.Pa.1983) ("In the absence of mandatory language, the Court does not favor a literal application of § 550(a)(1) to the facts at bar when such an application would lead to an inequitable result."); In re Church Buildings and Interiors, Inc., 14 B.R. 128, 131 (Bkrtcy.W.D.Okla.1981) ("[T]his Court agrees with Collier's treatment thereof and reaches the same equitable result.") This court has, in a prior ruling, agreed that principles of equity should prevent recovery by the trustee under circumstances akin to those at bar. See Matter of Isis Foods, Inc., Adversary Proceeding No. 83-1124-3-11 (Bkrtcy.W.D.Mo. Oct. 5, 1984), to the following effect:
"According to the literal wording of § 547(b)(1) of the Bankruptcy Code, the transfer, to be avoidable may have been either `to or for the benefit of a creditor.' Section 550(a) of the Bankruptcy Code defines the parties from whom recovery of a preference may be had as the `initial transferee' or `any immediate or mediate transferee of such initial transferee.' But if, as in the action at bar, the prohibited transfer is [to a contransferee as to whom the transfer would not be preferential, that transferee] cannot be a `transferee' within the meaning of that section, . . . See 4 Collier on Bankruptcy ¶ 550.02, p. 550-7 (1984), to the following effect: `In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should exercise its equitable powers under section 105(a) and 28 U.S.C. § 1481 to prevent an inequitable result.'" (Emphasis added.)
Accordingly, on the basis that equity simply will not permit recovery from initial transferee who is a legitimate creditor and as to whom the transfer is not a preference, this court agrees with the decisions summarized above. These decisions are said in recent commentary to represent the majority rule. See Jeffrey T. Wegner, "Preferential Transfers and Fraudulent Conveyances," Eighth Annual Midwestern Bankruptcy Law Institute, pp. 3-1, 3-12 (1988), to the effect that "[t]he majority holds that a non-insider creditor who received a transfer between 91 days and one year before bankruptcy will be shielded from having the transfer avoided."
Further, it appears to this court that there are cogent reasons grounded in fundamental canons of substantive and procedural law why the reference to "initial transferee" in § 550(a) of the Bankruptcy Code must be construed to mean an initial transferee with respect to whom the transfer was preferential. This is plain from the inner context of § 550, which makes the "good faith," "without knowledge," and "for value" defense applicable only to transferees other than the initial transferee.[4] The only palpable reason for this distinction is that, under the necessary principles traditionally employed in preference litigation, the good faith of the preferee has been held to be irrelevant. See, e.g. Bank of Glen Head v. Katz, 568 F.2d 964, 971 (8th Cir.1977), to the effect that "[i]f all . . . elements of a preference . . . exist, a preference will be found despite lack of intent on the part of the bankrupt to effect a preference." Nor, under the precise and explicit terms of § 547, do the giving of reasonably equivalent value or lack of knowledge of the preferential character of the transfer provide any defense for the initial transferee. Rather, the defenses provided for the initial transferee are otherwise defined in § 547 to include, inter alia, the defense that the transfer is not *227 preferential as to the initial transferee. The cases cited above which hold that they are bound by the clear language of § 550(a) so as to permit recovery of the value of a preference from an initial transferee without any showing that the transfer was preferential as to that transferee and without permitting any defenses to that transferee are erroneous in their fundamental postulation that there is no ambiguity in the statutory scheme. For the latent ambiguity in § 550 is that there is no apparent reason in the statute why specific defenses are allowed to all transferees except the initial transferee.[5] And this ambiguity is resolved by reference to § 547, which obviously provides the defenses which are available to the initial transferee. In this respect, it must also be observed that the decisions which construe § 550 not to permit any defenses to the initial transferee also transgress the rule of construction which holds that every statute and every part of a statute must be presumed to have some application.[6] For, if the defenses specified in and implied by § 547 do not apply to an initial transferee, they do not apply to any entity.[7] Accordingly, it must be concluded that the defense that the transfer was not preferential as to it is available to defendant in the action at bar and that it must prevail in the case at bar.
The crucial statement is made in the case decision which is primarily relied upon by the plaintiff, In re V.N. Deprizio Const. Co., supra, to the effect that § 550 contemplates a "bifurcated" process whereby the trustee may first seek a determination that the transfer was preferential and then determine from whom to recover it under § 550(a). "The Code bifurcates the treatment of avoidance and recovery issues concerning preferential transfers. Section 547 governs avoidability while section 550 governs recoverability." 86 B.R. at 550. And, in that case, the process is employed as if it is unnecessary, in the § 547 proceeding, to grant the transferee any opportunity to demonstrate that the transfer was not preferential with respect to it. Unless § 550 itself confers such a defense, it seems, the "initial transferee" can only pay over to the trustee the money which it has received in payment of a legitimate indebtedness. The grim fallacy in such a rational is evident when it is considered that, if In re Big Three Transportation, supra, and In re V.N. Deprizio Const. Co., supra, are correct, an "initial transferee" would not be entitled to raise the "payment in the ordinary course of business" defense under § 547(c)(2) of the Bankruptcy Code or the "subsequent value" defense under § 547(c)(4). This fallacy is exposed by the legion of cases in which those defenses have not only been raised, but raised successfully.
Perhaps the basic conceptual error made by the district court in the Deprizio case, supra, is so fully to identify the non-insider lender with the guarantor as to regard the transfer as a single transfer to a single entity. This is justified, in that court's opinion, by reference to certain generalized "equitable" principles which are seemingly intended to apply in every such case as that at bar: (1) "The insider guarantor would prefer to have the debtor satisfy its obligations out of corporate funds rather than have creditors pursue him for payment." 86 B.R. at 552. (2) "When an insolvent company pays a guaranteed debt over its *228 other debts, it is reasonable to presume the motive is to benefit the guarantor. We see nothing inequitable in forcing a creditor to return payments it received only because a debtor had engaged in preferential behavior." 86 B.R. at 553. Such generalized considerations ignore the plain fact that there is no article of bankruptcy law which would permit the non-insider creditor to be identified so fully with a debtor's guarantor that it should have no opportunity to prove that the transfer was not preferential with respect to it and that, even if preferential, it had defenses to raise, including the equitable ones raised by the case law. Rather, a rigid per se rule is erected: "[W]e conclude that all payments from one year to ninety days before the filing of the petition in bankruptcy made to creditors who, by operation of their guarantee or by operation of law, had a legally enforceable right to recover from the Debtor's insiders are subject to the preference rules of the Bankruptcy Code and are recoverable from the non-insider recipients of the payments." 86 B.R. at 553.[8] Thus, the non-insider should forfeit payment in every case because of the possibility that payment of the non-insider may benefit the insider guarantor.[9] And such a rule blithely ignores the clear letter of § 547 of the Bankruptcy Code which is intended to protect the non-insider creditor who receives a transfer from the debtor more than 90 days before bankruptcy. In cases such as that at bar, therefore, when the facts without contradiction show that the transfer to the non-insider was not within the 90-day period, the clear letter of § 547 dictates, as a matter of law, that the transfer is not recoverable from the non-insider. If generalized equitable considerations must be indulged, then this court agrees with those expressed in 4 Collier on Bankruptcy ¶ 550.02, p. 550-7 (15th ed.1983) as follows:
"In some circumstances, a literal application of section 550(a) would permit the trustee to recover from a party who is innocent of wrongdoing and deserves protection. In such circumstances the bankruptcy court should exercise its discretion to use its equitable powers under section 105(a) and 28 U.S.C. § 1481 to prevent an inequitable result . . . Likewise, if a transfer is made to a creditor who is not an insider more than 90 days but within one year before bankruptcy and the effect is to preferentially benefit an insider-guarantor, recovery should be restricted to the guarantor and the creditor should be protected. Otherwise a creditor who does not demand a guarantor can be better off than one who does."
There is no reason to penalize a non-insider creditor, in derogation of the plain letter of the preference statute, simply because it has exacted a guarantee from an insider.[10]
Accordingly, for the foregoing reasons, it is hereby
ORDERED that defendant's motion for summary judgment be, and it is hereby, granted. It is further, accordingly
ORDERED, ADJUDGED, AND DECREED that the plaintiff's complaint be, and it is hereby, dismissed.
NOTES
[1] It is the trustee's necessary contention, also, that both the bank and the guarantor were simultaneous "initial transferees." Otherwise, if there were any difference in the timing of the transfer to either of them, one of them would be entitled to the defenses provided by section 550(b) of the Bankruptcy Code. It would seem that the subsequent transferee, as between the bank and the guarantor, would have to be the bank, where the money has come to rest after extinguishing the obligation to the bank of the guarantor.
[2] "In the construction of statutes, the courts start with the assumption that the legislature intended to enact an effective law, and the legislature is not to be presumed to have done a vain thing in the enactment of a statute. Hence, it is a general principle that the courts should, if reasonably possible to do so, interpret the statute, or the provision being construed, so as to give it efficient operation and effect as a whole. An interpretation should be avoided under which the statute or provision being construed is defeated, or as otherwise expressed, nullified, destroyed, emasculated, repealed, explained away, or rendered insignificant, meaningless, inoperative or nugatory." 73 Am.Jur.2d Statutes section 249, p. 422 (2d ed.1974).
[3] It is for this reasonthat the preference avoidance action is a creature of equitythat a virtual unanimity of decisional law holds that there is no right to a jury trial in such an action.
[4] See section 550(b) of the Bankruptcy Code: "The trustee may not recover under subsection (a)(2) of this section from (1) a transferee that takes for value, including satisfaction or securing of a present or antecedent debt in good faith, and without knowledge of the voidability of the transfer avoided; or (2) any immediate or mediate good faith transferee of such transferee." Subsection (a)(2) thus referred to applies only to "any immediate or mediate transferee of (an) initial transferee."
[5] See note 4, supra. See also 73 Am.Jur.2d Statutes section 195, p. 392 (2d ed.1974), to the following effect: "An ambiguity justifying the interpretation of a statute is not simply that arising from the meaning of particular words, but includes such as may arise in respect to the general scope and meaning of a statute when all its provisions are examined. The courts regard an ambiguity to exist where the legislature has enacted two or more provisions or statutes which appear to be inconsistent. There is also authority that uncertainty may arise as to the meaning of a statute from the fact that giving a literal interpretation to the words would lead to such unreasonable, unjust, impracticable, or absurd consequences as to compel a conviction that they could not have been intended by the legislature."
[6] See note 2, supra. "In the interpretation of a statute, the legislature will be presumed to have inserted every part thereof for a purpose." 73 Am.Jur.2d Statutes section 250, p. 423 (2d ed. 1974).
[7] And thus they would have no ostensible application, contrary to the presumption cited in note 6, supra.
[8] Incongruously, the district court in the Deprizio case recognizes that "(w)hether in any given situation an insider-guarantor does nor does not benefit from a debtor's payment is a question of fact." (Emphasis added.) 86 B.R. at 553. The all-too-easy conversion of a question of fact into one ruled by an implacable and rigid legal principle perhaps derives from the mistaken view that, under the "clearly erroneous" standard of review, the bankruptcy court's ultimate finding of fact may be reviewed de novo by the appellate court. But, "according to the authorities, . . . the `clearly erroneous' standard (does not) permit de novo review of the ultimate, as opposed to subsidiary, findings of fact." Matter of Dowell, 82 B.R. 998, 1004, n. 7 (Bkrtcy.W.D.Mo. 1987). "Even when a (trial) judge finds an `ultimate fact,' a court of appeals is in error when it makes its own finding, for the `clearly erroneous' standard under Rule 52(a) applies to all findings, including findings of ultimate facts." 5 K. Davis, Administrative Law Treatise, para. 29:5, p. 352 (2d ed.1984). And see note 9, infra.
[9] See note 8, supra. But it is not necessary for this court to reach this issue because of the other considerations stated in the text of this memorandum.
[10] Under such circumstances, it is the insider-guarantor who is benefitted by recovery from the bank, a result which seems to this court to be highly inequitable.